Sol GOLDMAN, Plaintiff,

v.

BANQUE DE PARIS ET DES PAYS–BAS, Defendant.

No. 81 Civ. 7778.

United States District Court, S.D. New York.

July 22, 1983.

Boyle, Vogaler & Tiernan, New York City, for plaintiff.

Boulanger, Finley & Hicks, New York City, for defendant.

OPINION

GRIESA, District Judge.

This is an action alleging breach of an agreement to make a loan of $6,000,000 to

plaintiff. There are two counts in the complaint. The first count contains the allegations of breach and seeks compensatory damages. The second count seeks punitive damages.

Defendant, Banque de Paris et des Pays-Bas ("Paribas"), moves, pursuant to Fed.R. Civ.P. 37(b)(2)(C), for an order dismissing the first count because of plaintiff's ("Goldman") willful refusal to comply with his discovery obligations. Paribas moves to dismiss the second count for failure to state a claim upon which relief may be granted. The motion is granted in all respects.

The action was commenced on December 15, 1981. Goldman is in the real estate business in New York. Paribas is a French bank doing business in New York. Count one of the complaint alleges that Paribas agreed to make a loan of $6,000,000 to Goldman, and that Goldman paid to Paribas a "$30,000 deposit" to hold the loan. The complaint alleges that Paribas has refused to make the loan and has wrongfully retained the $30,000. Goldman seeks the return of the $30,000, and also seeks damages "believed to be in excess of two million dollars as a consequence of the inability to consummate various transactions in his real estate business and in connection with tax planning for 1981" (par. 10). As already noted, the second count seeks punitive damages and alleges that the activities of Paribas were intentional and malicious.

By Request for Production of Documents dated February 1, 1982, Paribas requested the production of documents relating to Goldman's claim that he suffered damages in his real estate business and tax planning. See especially Items 9 and 14, requesting production of tax returns and documents relating to tax planning. Goldman's May 28, 1982 response asserted that he had no documents relating to his real estate claim, and sought to avoid the request for tax planning documents by objecting to such requests "in light of" documents which were produced showing mitigation of damages.

Meanwhile Goldman refused to permit Paribas to take his deposition before taking the deposition of Paribas. At a pre-trial conference held on February 5, 1982, the court ordered that Goldman's deposition would precede that of Paribas, and that a full document production would precede any depositions.

On May 14, 1982, at another pre-trial conference, the court was advised by counsel for Goldman that discovery had not proceeded in light of certain difficulties with his client. The court ordered that Goldman's deposition must proceed forthwith or his action would be discontinued. A July 1, 1982 cutoff date for all discovery was imposed.

On August 4, 1982, at another pre-trial conference, the court was advised that Goldman was dropping his tax and real property transaction damage claim. The parties advised that the deposition of Goldman was "to be arranged", and the discovery cut-off was extended to October 8, 1982.

Problems persisted in arranging Goldman's deposition, however, and a pre-trial conference was held on September 27, 1982 to discuss the scheduling of that deposition. The court ordered that Goldman's deposition would be held in the courthouse, so that the court would be available for an immediate ruling as to any problem that might arise. Goldman's deposition was ordered to be held within two weeks, *at the latest.*

At a pre-trial conference held on January 14, 1983, counsel informed the court that Goldman's deposition had not yet taken place, although it was scheduled.

Goldman's deposition finally commenced on February 15, 1983 in the courthouse. In the course of his deposition, Goldman reversed the position taken at the August 4, 1982 conference respecting his damage claim. He testified that he claims, and intends to prove at trial, that Paribas' allegedly wrongful denial of a loan in 1981 damaged his real estate business and impaired his ability "to repay real estate taxes and other bills in order to lessen my income tax burden for '81" (Tr. 6). Goldman refus-

ed, however, to specify the various real estate transactions which he was prevented from consummating (Tr. 10).

Furthermore, contrary to his earlier representations in court documents, Goldman testified that he does, in fact, have documentary evidence to support his damage claims. He steadfastly refused, however, to give either testimony or produce documents in relation to these claims. The following is an excerpt (Tr. 7–11):

Q Do you have any records which would show us which real estate taxes and other bills you prepaid and which ones you were unable to pay?

A No, I couldn't give you all that. My properties are vast. There are over 500. I just can't tell you what I did. I'd be here for weeks talking about it.

Q Well, Mr. Goldman, I think we're entitled to know—

A You're not entitled to anything. You made a commitment. I want a delivery. That's all I'm interested in. It's not your business what I did or didn't do.

Q Are you claiming damages against the bank—

A You bet your life I'm claiming damages.

Q —for those same payments?

A For any payments. A deal is a deal. The bank took a deposit and never closed.

Q But you refuse to tell me what it is?

A I absolutely refuse to tell you.

\*  \*  \*  \*  \*  \*

Q How much is the amount you claim you were damaged, Mr. Goldman?

A A few million dollars.

Q Do you know the exact amount?

A No, I don't know the exact amount.

MR. FARRELLY: The complaint speaks for itself.

Q Do you intend to prove that amount at trial?

A I intend to prove it, yes.

Q Do you intend to furnish the defendant—

A When the proper time comes, we'll furnish you with whatever is necessary.

Q I'm asking you to furnish that information now.

A I don't want to give it to you now.

Q And you refuse to give it to me now?

A I refuse to give it to you now.

\*  \*  \*  \*  \*  \*

Q Can you tell me what kind of taxes it was that you were unable to pay at the end of 1981 by reason of the refusal of the bank to make the loan to you.

A Real estate taxes.

Q Will you produce for me your records as to your New York State income taxes and your real estate taxes for the year 1981?

A I don't think it's within your scope to see it.

Q Well, I'm asking you if you will produce it, sir.

A No, I don't want to produce it.

\*  \*  \*  \*  \*  \*

Q The complaint, Mr. Goldman, makes a claim to the effect that you were unable to consummate various transactions for your real estate business—

A That's true.

Q —in 1981.

A That's true.

Q What I'm asking you is, will you identify for me the various real estate transactions.

A No, I won't identify that.

Q You refuse to identify that?

A That's correct.

\*  \*  \*  \*  \*  \*

Q Is it your claim you would make 20 percent on your money in that period of time?

A Yes, I make that much, at least.

Q Do you have any documents that would prove that to me?

A I have plenty of documents.

Q  Will you produce those to me?

A  No, those are my business, not yours.

Q  But you are claiming damages based on that?

A  That's part of it, correct.

Finally, despite the fact that the very reason the deposition was being held in the courthouse was to permit an immediate ruling on disputed matters, Goldman precipitately left before a ruling could be obtained (Tr. 120).

THE WITNESS: I don't want to be jerked around any more. I've had enough for one day. Enough of this crap.

MR. FARRELLY [his counsel]: Then I guess his answer would be that you'll have to make a motion.

MR. HICKS: Mr. Goldman is leaving. That terminates the session for today, since Mr. Goldman is leaving.

THE WITNESS: That's right.

The time was 1:30 p.m.

At a pre-trial conference held on April 1, 1983, Goldman's counsel conceded that his client has refused to furnish discovery relating to his consequential damages, either testimony or documents. Goldman offers no excuse for his refusal to abide by this court's discovery orders.

■  Rule 37(b)(2)(C) authorizes the court, where "a party fails to obey an order entered under Rule 26(f)," to enter "an order striking out pleadings or parts thereof, or ... dismissing the action or proceeding or any part thereof ...". *See e.g. National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 642–3, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976); *Penthouse International, Ltd. v. Playboy Enterprises, Inc.,* 86 F.R.D. 396, 406–7 (S.D.N.Y.1980), *aff'd* 663 F.2d 371 (2d Cir.1981).

The sanction of dismissal is especially appropriate where, as here, the discovery problems result not from the negligence of trial counsel, *see e.g. Bon Air Hotel, Inc. v. Time, Inc.,* 376 F.2d 118, 121 (5th Cir.1967), *cert. denied,* 393 U.S. 859, 89 S.Ct. 131, 21 L.Ed.2d 127 (1968), but from a willful and deliberate refusal of the plaintiff to give essential discovery. The Supreme Court stated in *Societe Internationale pour Partic-ipations Industrielles et Commerciales v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958):

"Rule 37 should not be construed to authorize dismissal of [a] complaint because of petitioner's noncompliance with a pretrial production order when it has been established that failure to comply has been due to inability, *and not to willfulness, bad faith, or any fault of petitioner.*" (emphasis added)

■  Dismissal of count one is the appropriate remedy in the present case for Goldman's failure to comply with discovery obligations. The issue of damages is fundamental. The case cannot possibly go to trial without Paribas having discovery on this issue. There is no justification whatever for any lesser remedy, which would involve continued attempts to coax Goldman into respect for the processes of the court. He has none. He is not entitled to avail himself of the services of the court in this action.

■  Theoretically, the claim for the $30,-000 does require discovery on the quantum of damages. However, the court declines to keep the action open for litigation of the issue of liability for the $30,000, in view of the flagrant misconduct of Goldman. *See G.K. Properties v. Redevelopment Agency of San Jose,* 577 F.2d 645, 647 (9th Cir.1978).

■  Since count one is being dismissed for failure to provide discovery on the damage issue, it is inevitable that the second count, which is predicated upon the first count, must be dismissed. However, it should be noted that, under New York law, punitive damages may not be recovered in an action for breach of contract, absent allegations of fraud or imposition upon some public right. *Wegman v. Dairylea Cooperative, Inc.,* 50 A.D.2d 108, 376 N.Y. S.2d 728, 735 (4th Dep't 1975). As there is no allegation of either fraud or violation of a public right, the second count should be dismissed for failure to state a claim upon which relief may be granted.

■  Rule 37(b)(2)(E) also permits a court, in its discretion, to award attorney's fees to the aggrieved party. The rule provides, in pertinent part:

"[I]n addition [to the foregoing orders] ... the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."

*See Roadway Express Inc. v. Piper,* 447 U.S. 752, 763–64, 100 S.Ct. 2455, 2462–63, 65 L.Ed.2d 488 (1980); *Penthouse International Ltd., supra,* 663 F.2d at 392 (remanding to the district court for purposes of deciding whether to award costs).

It is clearly appropriate to award Paribas reasonable expenses including attorney's fees, resulting from Goldman's misconduct in connection with the discovery process. What has already been stated makes it clear that Goldman acted intentionally without the slightest justification.

In this regard, Paribas requests the amount of $6,397.30. The amount is reasonable and justified by the record presented.

For the foregoing reasons, the action is dismissed. Paribas is entitled to judgment against Goldman in the amount of $6,397.30 for expenses.

So ordered.