INDEPENDENT INVESTOR PROTEC-
TIVE LEAGUE, Martin F. Randolph,
Jr., Gary Michael and Michael Fagan,
Plaintiffs-Appellants,

and

I. Walton BADER, Appellant,

v.

TOUCHE ROSS & COMPANY,
Defendant-Appellee.

Nos. 187–189, Dockets 77–7187,
77–7271, 77–7273.

United States Court of Appeals,
Second Circuit.

Argued Oct. 17, 1977.

Decided April 4, 1978.

I. Walton Bader, White Plains, N.Y. (Bader & Bader, White Plains, N.Y., on the brief), for plaintiffs-appellants and appellant Bader pro se.

Gerald Walpin, New York City (James K. Nevling, Jr., and Rosenman, Colin, Freund, Lewis & Cohen, New York City, on the brief), for defendant-appellee Touche Ross & Co.

Before MOORE, FRIENDLY and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

The narrow issue on this appeal is whether the district court, in imposing sanctions under Fed.R.Civ.P. 37 against plaintiffs and their counsel for failure to comply with an order requiring service of answers to interrogatories by a specified date, abused its discretion. We hold that the district court acted well within its discretion under the particular circumstances of this case. We affirm.

I.

Appellants are Independent Investor Protective League (IIPL); three individuals, Martin F. Randolph, Jr., Gary Michael and Michael Fagan; and I. Walton Bader, attorney for IIPL and the three individuals. Appellee is Touche Ross & Company (Touche Ross).

Appellants (except Bader) were the four named plaintiffs below in a class action brought on behalf of the stockholders of Teleprompter Corporation (Teleprompter) against Teleprompter, Touche Ross and others (the action).[1]

---

1. The action which was commenced on September 26, 1973 in the Southern District of New York is entitled *Independent Investor Protective League, et al. v. Teleprompter Corporation, et al.* (Dkt. No. 73 Civ. 4133). It sought damages for alleged violations of the federal securities laws.

On November 18, 1974, while the Rule 37 motion was pending before Judge Owen, the instant action was consolidated with other sim-

As the result of a series of discovery proceeding events detailed below, an order was entered on January 9, 1976, after hearings, in the Southern District of New York, Richard Owen, *District Judge*, upon motion of Touche Ross pursuant to Fed.R.Civ.P. 37, which dismissed the action as against Touche Ross with prejudice and ordered IIPL and Bader to pay to Touche Ross the latter's expenses, including attorneys' fees, in connection with the Rule 37 motion and ensuing hearings.[2]

On an earlier appeal to our Court from the January 9, 1976 order by plaintiffs IIPL and Randolph and their attorney Bader, we dismissed the appeal on September 17, 1976 for lack of appellate jurisdiction, pointing out that there was no direction for the entry of final judgment pursuant to Fed.R. Civ.P. 54(b) and that the amount of expenses, including attorneys' fees, to be paid by IIPL and Bader to Touche Ross remained to be determined. 542 F.2d 157–58.

Thereafter a final judgment was entered on May 11, 1977 pursuant to Rule 54(b) which dismissed the action as against Touche Ross with prejudice and ordered that Touche Ross recover of IIPL and Bader

the sum of $8,074.38 ($7500 attorneys' fees, $549.38 transcript cost' and $25 witness' fees) representing the reasonable expenses of Touche Ross in connection with the Rule 37 motion and hearings.

From the judgment of May 11, 1977, the instant appeal has been taken.[3]

## II.

The events which led to the imposition of the Rule 37 sanctions here under review began on November 1, 1973—about a month after commencement of the action—when Touche Ross served on plaintiffs eleven relatively simple interrogatories. They called for information regarding the organization and membership of IIPL; the identity of the three individual plaintiffs; and the details of plaintiffs' acquisitions of shares of Teleprompter.

Plaintiffs at no time interposed objections to these interrogatories. They simply ignored them and failed to respond for more than eight months.

After several directions by the court to plaintiffs and their attorney, Bader, to answer Touche Ross' interrogatories,[4] on Au-

---

ilar actions under the caption *Harry Lewis , et al. v. Teleprompter Corporation, et al.* The consolidation was made without prejudice to any order that Judge Owen might make in the instant Rule 37 proceedings.

Touche Ross remains as a defendant in the consolidated action. The final judgment in the instant action expressly provides that it is to have no effect whatsoever on the consolidated action.

The consolidated action, from which the Rule 37 proceedings before Judge Owen were excluded, was assigned first to Judge MacMahon and presently is assigned to Judge Broderick.

2. Judge Owen also referred the record to the Chief Judge of the District Court for further consideration pursuant to Rule 5(f) of the General Rules of the Southern District of New York which provides for disciplining of attorneys. This matter is not before us on the instant appeal.

3. Symptomatic of the genius for confusion which appellants' counsel has demonstrated throughout are the *three* separate notices of appeal he has filed, one of which we dismissed with double costs as premature and nugatory

since it was filed before there was any order or judgment from which to appeal. We thereafter ordered all dockets consolidated on the instant appeal.

We do not share the doubt, expressed in the opinion on the prior appeal, 542 F.2d at 157–58, that an appeal is now proper. However, appellants press the argument that Judge MacMahon's orders allowing voluntary dismissals, *see* 542 F.2d at 157 n.2, although subsequently vacated by him, precluded Judge Owen from directing dismissal and imposing attorney's fees and costs. We need not pursue appellee's argument that the orders allowing voluntary dismissal were invalid for lack of compliance with Fed.R.Civ.P. 23(e) or otherwise. The voluntary dismissals were an obvious ploy to avoid what Bader rightly feared Judge Owen might do. When Judge MacMahon realized that he had been imposed upon, he properly vacated the orders.

4. On December 11, 1973 Judge Griesa, to whom the case originally was assigned, orally directed that answers to the interrogatories be served so as to be available on a motion to dismiss the amended complaint. Bader first agreed to serve the answers by January 18,

gust 16, 1974 Judge Owen granted a written motion by Touche Ross pursuant to Rule 37(a)(2) to compel each of the plaintiffs to respond to the interrogatories. The judge ordered compliance within twenty days, i. e., by Thursday, September 5, 1974. This order was announced in open court on August 16, at which time Bader was present.

On September 6, counsel for Touche Ross received in the mail two envelopes, each postmarked September 5. One contained a copy of the purported answers of IIPL bearing the typed date, September 5, 1974. The other contained copies of the purported answers of each of the individual plaintiffs, each bearing the typed date, August 29, 1974, although the individual plaintiffs, Randolph, Fagan and Michael, lived in California, Connecticut and Vermont, respectively.

All of the copies of the answers, with one exception, were unconformed, there being no indication whether they had been signed and sworn to by plaintiffs. The one exception was that, as part of the verification of IIPL's answers, there appeared the following: "/s/ Merrill Sands". Sands was an officer of IIPL and a brother-in-law of Bader (as disclosed at the subsequent hearing before Judge Owen).

Being understandably suspicious of the form of the purported answers, counsel for Touche Ross, on September 6, the same day the answers were received, wrote to Bader requesting that the originals of the answers be filed pursuant to Rule 6(c) of the General Rules of the Southern District of New York. This letter also noted the failure to conform the copies of the answers and inquired whether they actually had been signed and sworn to by the several plaintiffs.

In response to this and another request from counsel for Touche Ross, Bader insisted that he would send photocopies of the original interrogatories "in a few days". Not satisfied, counsel for Touche Ross on September 10 demanded to see the originals. Bader, while averring that he had the answers to the interrogatories, stated that he could not show them on that day because he was not in his office and did not know where in his office the interrogatories were and that he might have left them at home. An appointment was set up for the following morning at Bader's office, which counsel for Touche Ross confirmed by letter. On the morning of September 11, Bader showed to counsel for Touche Ross the original answers of IIPL (purportedly sworn to by Sands, as Secretary of IIPL, on September 5 before Bader as notary public) and the original answers of plaintiff Randolph (purportedly sworn to on September 3 before a notary public in California). The answers of IIPL and Randolph were dated September 5 and August 29, respectively; they were signed by Bader as attorney.

Also in Bader's office on September 11, counsel for Touche Ross requested to see the original answers of the other two plaintiffs, Fagan and Michael. Bader admitted that he had not received them. He was unable satisfactorily to explain why copies of the purported answers of these two plaintiffs, each dated August 29, had been mailed by Bader to counsel for Touche Ross on September 5.

---

1974. Later he told the court he would serve them by February 1, but failed to do so.

After the case was assigned to Judge Owen a status conference was held, at which time Judge Owen orally directed Bader to serve the long overdue answers not later than February 5, 1974. Again he failed to do so; nor did he bother to request or obtain an extension for compliance.

Not until July 15, 1974—more than eight months after the interrogatories had been served—did Bader get around to serving purported answers to the Touche Ross interrogatories. These answers were incomplete and unresponsive. No answers at all were served on behalf of the three individual plaintiffs, although five of the eleven interrogatories were propounded specifically to them. The answers on behalf of IIPL amounted to little more than references to allegations in the amended complaint.

This triggered Touche Ross' Rule 37(a)(2) motion of August 2, made returnable August 16, which Judge Owen granted as stated in the text.

In light of these disclosures, counsel for Touche Ross informed Judge Owen by a hand-delivered letter on the same day, September 11, of these disclosures and of Bader's noncompliance with the court's order of August 16.

On September 20, Judge Owen heard arguments on a motion by Touche Ross, brought on by an order to show cause dated September 13, to dismiss the action as against Touche Ross pursuant to Rule 37(b) and (d); and on a motion by plaintiffs for an extension of time with respect to the interrogatory answers of plaintiffs Fagan and Michael. At the conclusion of the arguments on September 20, the court denied plaintiffs' motion and ordered an evidentiary hearing into the circumstances under which copies of plaintiffs' purported answers to Touche Ross' interrogatories were served on September 5.

The hearing ordered by Judge Owen was held before him on November 4, 13, and 14. The evidence adduced included the testimony of Bader, Sands and Bader's secretary, Mrs. Blacker. In a comprehensive opinion dated January 9, 1976, Judge Owen found that the answers of Fagan and Michael concededly had not been received on September 5; that the answers of Randolph had not been received on September 5; and that there was "no credible evidence" that the answers of IIPL were timely executed and served. The judge therefore ordered that the action as against Touche Ross be dismissed with prejudice and that IIPL and Bader pay to Touche Ross the latter's expenses, including attorneys' fees, in connection with the Rule 37 proceedings.

In support of the Rule 37 sanctions imposed, Judge Owen reached the following critical conclusion:

"On the entire record before me, it is clear and I cannot but conclude that Mr. Bader intended the Rosenman firm [counsel for Touche Ross] to believe that the various answers to interrogatories were due and timely served on the very last day for such service, September 5, 1974, when in fact they had not been. I also cannot but conclude that thereafter

Messrs. Bader and Sands made *false statements* and gave *false testimony* pursuant to an evolving plan to first deceive counsel and later the Court as to the circumstances surrounding the mailing of the purported 'answers' to interrogatories on behalf of plaintiffs Independent Investor Protective League and Fagan, Michael and Randolph on September 5, 1974." (emphasis added) (footnote omitted).

### III.

We turn directly to what we find to be the only issue on this appeal that warrants discussion: whether the district court abused its discretion in imposing the Rule 37 sanctions that it did against plaintiffs and their counsel under the circumstances of this case. We hold that it did not.

Rule 37(b)(2) and (d), pursuant to which sanctions were imposed here by the district court, in relevant part provides:

**"(b) Failure to Comply with Order.**

. . . .

(2) *Sanctions by Court in Which Action is Pending.* If a party or an officer, director, or managing agent of a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

. . . .

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

. . . .

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

. . . .

**(d) Failure of Party to Attend at Own Deposition or Serve Answers to Interrogatories or Respond to Request for Inspection.** If a party or an officer, director, or managing agent of a party . . . fails . . . (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraph . . . (C) of subdivision (b)(2) of this rule. In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."

The above provisions of Rule 37, to the extent here applicable, are simple and straightforward. The essence of the district court's findings are that plaintiffs' answers to the Touche Ross interrogatories were not timely filed in obedience to the court's order entered after repeated directions to answer the interrogatories which had been outstanding for many months; and that plaintiffs' attorney and an officer of IIPL had made false statements and had given false testimony to deceive counsel for Touche Ross and the court regarding the timeliness of the service of plaintiffs' answers. The court therefore dismissed the action as against Touche Ross with prejudice and ordered IIPL and Bader to pay to Touche Ross the latter's expenses, including attorneys fees, caused by such conduct. The court specifically declined to find, within the meaning of Rule 37, that the failure to comply with the court's order was "substantially justified or that other circumstances make an award of expenses unjust."

We hold that the district court acted well within its discretion under the circumstances of this case. In view of the clarity of the Rule 37 provisions for sanctions, their obvious purpose and the pervasive findings of the district court which we find to be more than adequately supported by the record, we find it unnecessary to dilate upon our conclusion. We do note, however, that in the most recent Supreme Court decision dealing with Rule 37 sanctions the Court reversed the Third Circuit's dismissal of the district court's dismissal of an antitrust action for failure to serve timely answers to written interrogatories, and in so doing stated:

"The question, of course, is not whether this Court, or whether the Court of Appeals, would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing." (citations omitted) *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642 (1976).

Here we hold that the district court did not abuse its discretion.

We have carefully considered appellants' other claims and we find them to be without merit.[5]

Affirmed.

---

**5.** We have limited our ruling to the narrow issue stated at the beginning of this opinion. In so doing, however, we do not put our imprimatur on the behavior of counsel *on either side* in the conduct of discovery proceedings as disclosed by the record before us.

The conduct of appellants' counsel was utterly intolerable and reprehensible. The findings of the district court and our affirmance of the district court's exercise of discretion speak for themselves.

This however is not to be taken as approbation on our part of the conduct of appellee's counsel (referring to counsel other than the one who argued before us on this appeal). It is apparent that the delay of a few days in ascertaining the dates of purchases, the number of shares purchased and the price per share paid was of no moment in the instant action, especially where, as we were told at oral argument, discovery is still going on in the consolidated action after the elapse of three years. It also must have been obvious to appellee's counsel that, even if he succeeded in obtaining the extreme relief of dismissal of the instant action, this would avail his client very little in view of the pendency of the consolidated class action, in which the plaintiffs in the instant

action still can participate in any recovery obtained for the benefit of the class.

None of us on this panel is so far removed in time from the practice of law that we fail to recognize that there probably will never be a perfect pretrial discovery proceeding, any more than a perfect trial or a perfect tender offer. *See Electronic Speciality Co. v. International Controls Corp.*, 409 F.2d 937, 948 (2 Cir. 1969).

Nevertheless, a personal feud between counsel does not justify the inordinate expenditure of time and money on the part of counsel and the parties as reflected by this record—to say nothing of the enormous imposition on the time of a busy district court and an appellate court that has now had two rounds of this proceeding.

We think that both the district court and ours deserve better of counsel *on both sides.*