Michael E. ALTSCHULER and Julia A.
Altschuler, Plaintiffs,

v.

SAMSONITE CORP., Defendant and
Third-Party Plaintiff,

v.

UNITED STATES of America,
Third-Party Defendant.

No. 83 CV 4060.

United States District Court,
E.D. New York.

Jan. 23, 1986.

Richard T. Sinrod, Massapequa, N.Y., for
plaintiffs.

Joseph A. Maria, White Plains, N.Y., for
defendant and third-party plaintiff.

Raymond J. Dearie, U.S. Atty., Brooklyn, N.Y. (Susan M. Rogers, of counsel), for third-party defendant.

## ORDER

McLAUGHLIN, District Judge.

The annexed Report and Recommendation of United States Magistrate Shira A. Scheindlin is hereby adopted as the Opinion of this Court. I have carefully considered defendant's objections to the Report, and find them to be without merit. The third-party complaint is dismissed with prejudice, and a default judgment will be entered against defendant Samsonite. In addition, counsel for Samsonite will pay to the United States attorneys fees and costs in the amount of $1,136.20. This case shall be set down for an inquest before Magistrate Scheindlin to determine plaintiff's damages. The parties are ordered to contact her chambers to schedule that proceeding.

SO ORDERED.

## REPORT AND RECOMMENDATION

### Nov. 13, 1985

SHIRA A. SCHEINDLIN, United States Magistrate.

Third party defendant, the United States of America ("USA"), has moved pursuant to Fed.R.Civ.P. 37 to dismiss the third party complaint with prejudice or, in the alternative, to preclude Samsonite from introducing evidence as to both the condition of the Model 6100 chair involved in this action and the USA's negligence. USA's Motion at 2. Plaintiffs, Michael and Julia Altschuler have cross moved pursuant to Fed.R. Civ.P. 37 to strike Samsonite's answer or, in the alternative to preclude Samsonite from introducing evidence of Michael Altschuler's negligence. Plaintiffs' Cross Mo-

tion at 1-2. The basis for these motions is Samsonite's failure to produce documents, answer interrogatories and obey this court's discovery order. The USA and plaintiffs also seek attorney's fees and costs as sanctions against Samsonite pursuant to Fed.R.Civ.P. 37.

## I. STATEMENT OF FACTS

Plaintiffs, Michael and Julia Altschuler, commenced this action against Samsonite in September 1983 for negligence, breach of warranty and strict liability. Michael Altschuler alleges that while working at the United States Post Office in Kennedy Airport in March of 1982, he sustained injuries when a Model 6100 plastic chair designed, manufactured and sold by Samsonite collapsed beneath him as he was sitting down. He seeks damages of seven million dollars. Complaint at 3. Julia Altschuler seeks damages of $750,000.00 for lost earnings, support, services and loss of consortium. Complaint at 10. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (Supp. V 1981).

In June of 1984, nine months after the action began and three months before the scheduled trial date, Samsonite filed a third party complaint against the USA for indemnification and contribution alleging that the USA negligently maintained and serviced the chair in question. Samsonite's Third Party Complaint at 2.

On April 10, 1984, the district court set a discovery cut-off of September 28, 1984. Scheduling Order, April 10, 1984. The court extended the discovery deadline twice, with consent, at the USA's request.[1] The first extension was until February 15, 1985; the second to May 31, 1985. Amended Scheduling Order, April 19, 1985.

---

**1.** After a scheduling conference held October 3, 1984, problems arose regarding discovery of the Samsonite chair. The Postal Inspector at Kennedy Airport originally told the Assistant U.S. Attorney that the chair existed. In turn, the Assistant informed both plaintiff and Samsonite that the chair would be available for inspection. Letter, October 18, 1984. On November 11, 1984, the attorneys for plaintiff and Samsonite

as well as plaintiff's expert came to the United States Attorney's Office to inspect the chair. The chair was not produced, however, as it had been destroyed soon after the accident. Letter, August 30, 1985. The Assistant contends that she was never told exactly when the inspection was to occur and that she herself was not notified that the chair had been destroyed until November 24, 1984. Letter, August 30, 1985.

On February 26, 1985, a representative of Samsonite, William J. Daniel, was deposed. At this deposition, Samsonite was asked to produce certain information and documents regarding

(a) the research, development and design of the Samsonite Model 6100 chair; (b) the Model 6100's marketing, sale and distribution to the United States Postal Service in the New York area; (c) Samsonite's methods of checking, testing, inspection and examination of said chair and its component parts; (d) the requisite maintenance and service of said chair, including any Samsonite warranties, disclaimers, directions, instructions, policies, standards, notices of warnings (whether or not conveyed by Samsonite to the United States Postal Service or other purchasers of said chair); (e) the use of said chair, or any restrictions thereon, and its useful life or life; and (f) other complaints with respect to said chair.

USA's Declaration in Support of Motion at 3. Samsonite promised that the documents would be produced by May 5, 1985. *Id.*

When no documents arrived on May 5th, the USA served Samsonite with a Request to Produce, a Notice of Deposition for June 5, 1985 and interrogatories. USA's Memo in Support of Motion at 10–11. Samsonite failed to either produce the requested documents, seek a protective order or ask for an extension of time within thirty days as required by Fed.R.Civ.P. 34. Samsonite also did not respond to the USA's interrogatories, object to them in any manner or seek an extension of time to answer as required by Fed.R.Civ.P. 33.

On June 4, 1985 the Assistant called Mr. Maria, Samsonite's counsel, to confirm the time for the deposition, scheduled for June 5, of a Samsonite representative with knowledge regarding marketing, sale and distribution of the Model 6100 chair. The Assistant was informed by Mr. Maria's secretary that Mr. Maria "was not producing anyone else." USA Declaration at 5. The Assistant said that she placed calls to Mr. Maria on June 5, 6 and 12 in order to discuss the outstanding discovery problems, but that he refused to answer or return her calls. USA Memo at 14.

On June 13, 1985, a discovery conference was held before the Honorable Joseph M. McLaughlin. Judge McLaughlin ordered Mr. Maria to produce all discovery then outstanding by June 28, 1985. USA Memo at 2. If Samsonite did not comply with this order, Judge McLaughlin directed the USA to move, pursuant to Fed.R.Civ.P. 37 to preclude Samsonite from introducing any evidence as to the condition of the Model 6100 chair. *Id.*[2] Mr. Maria did not produce any discovery by June 28, 1985. At no time did he contact either the government or the plaintiff to explain his failure to produce the required discovery materials. *Id.* at 9. The USA then moved to preclude and plaintiff cross-moved for similar relief. Samsonite filed no papers in response to either motion.

A hearing on the USA's motion and plaintiffs' cross motion was set for September 3, 1985 at 3 p.m. Tr. 2, 3.[3] On August 30th, Mr. Maria called my office requesting an adjournment of the hearing until 5 p.m. September 3rd. All parties eventually agreed to argue the motions at 9 a.m. on September 3rd. At 9 a.m. on the third, the USA and plaintiff appeared but Mr. Maria did not. Forty minutes later, he was contacted at his office. He explained that he thought the hearing had been set for 9 a.m. on September 4th. *Id.* The hearing proceeded nonetheless with Mr. Maria participating by telephone.

Mr. Maria first defended his failure to comply with the court's discovery order on the ground that there were no documents responsive to either plaintiffs' or the USA's request. Tr. 18. Later, however, Mr. Ma-

---

**2.** This sanction is tantamount to a dismissal of Samsonite's third party complaint because Samsonite can neither state nor prove a claim of negligence against the United States absent evidence of the condition of the chair. *Goldman v.*

*Banque De Paris Et Des Pays-Bas,* 99 F.R.D. 554 (S.D.N.Y.1983).

**3.** Tr. refers to the transcript of the hearing held on September 3, 1985.

ria admitted that in fact, there were responsive documents. Tr. 23. He next asserted that "in his experience as a litigator, when things are done in litigation, it is not always by written stipulation and court order." Tr. 19. He also claimed that he was unable to retrieve the requested documents because Samsonite's general counsel is in Denver, Colorado while its facility is in Mumford, Tennessee. Tr. 23. He finally excused his failure to comply with the discovery order by claiming that he was unable to reach either counsel for the US or the plaintiff during the summer months. Tr. 23.

## II. DISCUSSION

It is respectfully recommended that Samsonite's third party complaint be dismissed with prejudice and that a default judgment be entered against Samsonite pursuant to Fed.R.Civ.P. 37(b)(2) because of Samsonite's consistent failure to cooperate in this litigation in good faith and to obey a discovery order of which it had proper notice.

■ Fed.R.Civ.P. 37(b)(2)(C) states that where a party has failed to obey an order to provide discovery, the court may dismiss the action or enter a default judgment against the erring party. The use of these harshest of sanctions is limited to cases involving "willfulness, bad faith, or any fault" on the part of the disobedient party. *Societe Internationale v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958). *See Urban Electrical Supply and Equipment Corp. v. New York Convention Center Development Corp.*, 105 F.R.D. 92, 98 (E.D.N.Y.1985). The Second Circuit has held that gross professional negligence qualifies as "fault" under this doctrine. *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1065–66 (2d Cir.1979).

■ The severe sanctions of dismissal and entry of judgment serve to punish litigants whose conduct is "sufficiently flagrant to warrant such a sanction and to deter those who might be tempted to engage in dilatory conduct ..." *Urban Electrical*, 105 F.R.D. at 97 (citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam)). *See, Roadway Express Inc. v. Piper*, 447 U.S. 752, 763–64, 100 S.Ct. 2455, 2462–63, 65 L.Ed.2d 488 (1980). Also, these severe sanctions prevent undue delays in the disposition of pending cases and avoid congestion in the court's calendars. *Penthouse International, Ltd. v. Playboy Enterprises, Inc.*, 663 F.2d 371, 386 (2d Cir.1981) (*citing Link v. Wabash R.R. Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)).

■ The choice of the appropriate sanction lies within the discretion of the court after consideration of the entire record. *National Hockey League*, 427 U.S. at 642, 96 S.Ct. at 2780. *See, International Mining Co., Inc. v. Allen and Co., Inc.*, 567 F.Supp. 777, 789 (S.D.N.Y.1983).

Here, Samsonite's conduct warrants the imposition of severe sanctions. Samsonite never presented a justifiable excuse nor demonstrated an inability to comply with discovery requests or the court order. Plaintiffs and the USA, in contrast, have drafted and responded to interrogatories and document requests and otherwise complied with discovery in good faith. Samsonite failed to produce the documents requested by plaintiffs and the USA at the February deposition without explanation. After the USA formally requested documents and interrogatories on May 7th, Samsonite again failed to produce the documents, answer the USA's interrogatories, or offer an excuse to the other parties and the court for its noncompliance. Further, on June 5, 1985, Mr. Maria refused to produce a Samsonite representative for a deposition of which he had one month's notice. Mr. Maria never moved for a protective order precluding the taking of the deposition.

Samsonite was given a "last chance" at the conference before Judge McLaughlin on June 13, 1985. The court directed the USA to move for sanctions if Samsonite failed to produce the outstanding discovery by June 28th. Despite the court's warning,

June 28th passed without plaintiffs or the USA receiving anything from Samsonite.

Mr. Maria added to his already grossly negligent behavior by failing to respond to the USA's or plaintiffs' motions. Additionally, he failed to appear for the hearing on these motions despite the fact that it was Mr. Maria who called four days earlier to reschedule the hearing. This conduct amounts to a "gross disregard of [federal] procedural rules and this court's directions," warranting severe sanctions. *T.E. Quinn Truck Lines, Ltd. v. Boyd, Weir and Sewell, Inc.*, 91 F.R.D. 176, 180 (W.D.N.Y.1981).

Mr. Maria's arguments in defense of his non-compliance are specious. He claims that the distance between Samsonite's general counsel and its facility rendered it impossible for him to obtain the necessary documents by June 28th. Tr. 23. Mr. Maria had four months to gather the documents and two months to respond to the interrogatories. If he indeed faced some obstacles during this time, the federal rules provide that he should have either moved for a protective order or sought a stipulation to extend Samsonite's time to answer. Fed.R.Civ.P. 34, 29. Mr. Maria did neither. He asserts that in his legal practice he avoids court orders and written stipulations. Tr. 19. Finally, Mr. Maria states that he could not complete discovery because his adversaries were difficult to reach during the summer months. Tr. 23. Discovery was due June 28th, 1985, well before the summer was underway.

In this circuit, courts have dismissed actions where only one discovery order is violated or where a party has demonstrated willfull disrespect for discovery obligations. *United States Freight Co. v. Penn Central Transportation Co.*, 716 F.2d 954 (2d Cir.1983) (per curiam) (violation of one discovery order of which defendants had proper notice warranted the entry of a default judgment); *Independent Investor Protective League and Bader v. Touche Ross and Co.*, 607 F.2d 530 (2d Cir.1978) (failure to respond to interrogatories and obey a court order warranted dismissing the complaint); *International Mining Co., Inc. v. Allen and Co.*, 567 F.Supp. 777 (S.D.N.Y. 1983) (plaintiff's failure to produce documents, supply adequate answers to interrogatories without justifiable excuse warrants dismissal of a complaint). In *Cine v. Forty-Second Street*, 602 F.2d at 1068, the court emphasized, "in this day of burgeoning, costly and protracted litigation courts should not shrink from imposing harsh sanctions where ... they are clearly warranted."

■ Here, Samsonite had proper notice of Judge McLaughlin's discovery order and had an opportunity to argue its case against the proposed sanctions. Thus, Samsonite's procedural rights were protected. *United States Freight Co.*, 716 F.2d at 955. *See Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 42 (2d Cir.1982). Dismissal of Samsonite's claim against the USA and entry of a default judgment against it does not impose an unjust penalty on Samsonite. In *Link v. Wabash Railroad Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), the Supreme Court reasoned that since a party voluntarily chooses its attorney, it cannot later avoid the consequences of the acts or omissions of this freely selected agent. This principle must be adhered to even if counsel's disregard of his professional responsibility results in the dismissal of his client's claim or the entry of judgment against the client. *Cine Forty-Second Street Theatre*, 602 F.2d at 1067.

■ In addition to the sanctions of dismissal and entry of judgment, Fed.R.Civ.P. 37(b)(2) and 37(d) provide that

> [t]he court shall require the party failing to act or obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

In this case, Mr. Maria has presented no justifiable excuse for his failure to obey Judge McLaughlin's court order, produce a Samsonite representative for deposition,

serve answers to interrogatories, or respond to a request for documents. Thus, I respectfully recommend that Mr. Maria be ordered to pay the government $1,136.20 for attorneys' fees and costs for its motion. USA's Declaration in Support of Motion, Fees Appendix.[4] I do not recommend any award of fees to plaintiffs.[5]

## III. CONCLUSION

■ Because of the grossly negligent conduct of Samsonite in failing to produce documents, answer interrogatories, abide by procedural rules and obey this court's discovery order, I respectfully recommend that Samsonite's third party complaint be dismissed with prejudice and a default judgment be entered against Samsonite pursuant to Fed.R.Civ.P. 37(b)(2)(C). In addition, I recommend that the government be awarded attorneys fees and costs pursuant to Fed.R.Civ.P. 37(b)(2) and 37(d).

A copy of this Report and Recommendation is being mailed today to all counsel, who are hereby advised that objections to the report may be served and filed with the District Court, with a copy to me, within ten (10) days of receipt.

---

**4.** The government attorney requested compensation at the rate of $75.00 per hour for her work and $40.00 per hour for her legal assistant. The use of market rates is appropriate in the context of Rule 37.

**5.** Plaintiffs have asked for $1,500.00 in attorneys' fees and costs related to their cross motion. Plaintiffs Cross Motion at 2. However, plaintiffs did not submit time records nor indicate, in any way, why $1,500.00 is the appropriate amount. The Second Circuit requires attorneys seeking fee awards to submit contemporaneous records for work performed after June 15, 1983. *In Re Agent Orange Product Liability Litigation,* 611 F.Supp. 1296, 1306 (E.D.N.Y. 1985) (*citing New York State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1147–48 (2d Cir.1983). *See also Sierra Club, et al. v. United States Army Corps of Engineers, et al.,* 776 F.2d 383, 392–93 (2d Cir.1985). Here, plaintiffs' attorney worked on the cross motion in August of 1984, well after the June, 1983 cut-off date applied by the Second Circuit. Because Mr. Sinrod failed to submit even a single time record for work performed, he is not entitled to receive attorneys' fees or expenses.