**Margaret BURNETT and Motier Haskins, Plaintiffs,**

v.

**Telda VENTURI and Yvo Venturi, Defendants.**

**No. 94–CV–895.**

United States District Court, N.D. New York.

Oct. 18, 1995.

306

Walter, Thayer Law Firm, Albany, NY (Mark S. Mishler, of counsel), for plaintiffs.

Tobin, Dempf Law Firm, Albany, NY (Kevin A. Luibrand, of counsel), for defendants.

## MEMORANDUM–DECISION AND ORDER

McAVOY, Chief Judge.

## I. INTRODUCTION

**Plaintiffs Margaret Burnett and Motier Haskins** originally commenced this action by filing a complaint on July 19, 1994. Plaintiffs submitted an amended complaint on January 30, 1995, wherein they seek to recover compensatory and punitive damages, along with attorneys' fees and costs, for alleged violations by **defendants Telda Venturi and Yvo Venturi** of 42 U.S.C. §§ 1982 and 1988, the Fair Housing Act as amended (42 U.S.C. §§ 3601, et seq.), the Thirteenth Amendment, and New York Law. The injuries claimed arise from alleged discrimination on the basis of both race and family status.

Defendants moved to dismiss plaintiffs' claims or, alternatively, for the preclusion of certain evidence pursuant to Fed.R.Civ.P. 37 because of plaintiffs' failure to produce certain requested audio recordings. Defendants also moved for monetary sanctions in the

form of attorneys' fees for the alleged discovery violations. Plaintiffs opposed the motions and cross-moved for leave to file a second amended complaint and for summary judgment on their claims of discrimination based on family status. The following constitutes the Court's findings of fact and conclusions of law with respect to the issues raised.

## II. BACKGROUND

Plaintiffs Burnett and Haskins are an African-American married couple whose household includes Ms. Burnett's three minor children from a previous marriage. Defendants Telda and Yvo Venturi are the owners of a three-bedroom, single-family house located in Latham, New York, that they rent to tenants for residential purposes. In June, 1994, defendants advertised the Latham house for rent in the Albany *Times–Union.* Plaintiffs responded to the advertisement and, after telephone conversations with defendant Telda Venturi, scheduled an appointment to see the property on June 21, 1994.

Plaintiffs were in fact shown the house by defendant Telda Venturi on June 21, 1994, and they indicated to Ms. Venturi their interest in renting the house. Ms. Venturi provided plaintiffs with an application form to complete. Plaintiffs indicated on the form, among other things, that they wished to have the three children—all boys, ages 9, 11, and 12—reside with them in the house. The completed application was returned to Ms. Venturi that evening, and she informed plaintiffs that she would let them know whether they would be accepted as tenants. The next day, however, Ms. Venturi notified plaintiffs that they could not rent the house because "[their] family was too big for the house." (Haskins Dep. at 75. *See also* T. Venturi Dep. at 30.)

On June 25, 1994, plaintiffs sought to clarify their status regarding rental of the Latham house, so plaintiff Haskins telephoned Ms. Venturi once more. In response to Mr. Haskins' inquiry as to whether the house was still available, Ms. Venturi answered in the affirmative. Mr. Haskins then asked, in essence, why his family was not being considered. Ms. Venturi answered again that "you still have a big family and I still have a small house." (T. Venturi Dep. at 33.) Plaintiff Haskins apparently audiotaped this June 25, 1994, conversation with defendant Telda Venturi.

Soon after their last direct contact with defendants, plaintiffs arranged for a white, female friend to visit the Latham house as a Fair Housing "tester" to see if defendants would respond differently to someone who basically represented the polar opposite of plaintiffs. The "tester" also recorded her interaction with Ms. Venturi, yet she did so on the same microcassette that Mr. Haskins had used for the first recording. Plaintiffs revealed to defendants in the normal course of discovery that they had recorded the two conversations. Plaintiffs also revealed that they erased the recording of the conversation between the tester and Ms. Venturi soon after making it, for the stated reason that it was a very poor recording. Defendants eventually requested access to the tape itself through discovery. Plaintiffs alleged for over six months that they or their counsel had misplaced the tape and consequently could not provide it to defendants. However, plaintiffs recently "found" the tape and have offered to make it available for inspection.

Defendants eventually rented the Latham house to a single, white female with no children. Plaintiffs believe that they were denied the opportunity to rent the house because they are black and because of their family status. Defendants consistently have denied engaging in racial discrimination, but this is a factual question not before the Court for purposes of these motions. Defendants consistently have admitted, however, that plaintiffs were denied the chance to rent the Latham house because defendants believed the family was too large for a relatively small house. As a result, plaintiffs seek summary judgment on their claims of discrimination based on family status.

In regard to the missing audiotape, defendants argue that plaintiffs' failure to produce it in a timely fashion should lead to the dismissal of the Amended Complaint or, alternatively, to the preclusion of any testimony by plaintiffs regarding either of the recorded conversations with Ms. Venturi. Defendants also seek attorneys' fees for the

time expended pursuing their discovery requests pending motions. Plaintiffs agree that the tape was discoverable, and previously have offered to stipulate to the imposition of some sanction based on their inability to produce the item. Now that they have located the tape, however, plaintiffs have requested that defendants withdraw their motion for sanctions.

Finally, plaintiffs have moved for leave to file a second amended complaint based on their recent "discovery" of another New York statute[1] that they believe defendants have violated. Plaintiffs offer, however, no explanation for their failure to include this new cause of action in either of their previous pleadings other than the fact that they simply had not noticed it before. In an ironic twist, despite this two-month oversight, plaintiffs also argue that the Court should disregard defendants' Local Rule 7.1(f) statement because it was submitted three weeks after the deadline. Not surprisingly, defendants argue that plaintiffs' requests should be denied.

## II. DISCUSSION

### A. DEFENDANTS' RULE 37(d) MOTION

Fed.R.Civ.P. 37(d) allows the impositions of sanctions against a party for serious disregard of the obligations imposed by the federal discovery rules even though the party has not violated any court order. Failure to appear at a deposition or failure to serve answers or objections to interrogatories are examples of the kinds of violations cited. Fed.R.Civ.P. 37(d). For purposes of this case, Rule 37(d) also allows the court in which an action is pending to impose a variety of sanctions on a party that has failed to sufficiently respond to a request for inspection after proper service of the request.

■ Disciplinary sanctions under Rule 37 are intended to serve three functions. First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with either court orders or the ordinary standards of care appropriate for parties and

their attorneys. Third, they are intended to serve as a general deterrent in the case at hand and in other litigation, provided that the party against whom they are imposed was in some sense at fault. *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir.1988). The Second Circuit consistently has expressed its belief "in the importance of sanctions as a necessary means of dealing with a recusant party." *Id.* Although preclusion of evidence and dismissal of an action are harsh remedies and should be imposed only in rare situations, they sometimes are necessary to achieve the goals of Fed. R.Civ.P. 37 as a credible deterrent "rather than a 'paper tiger.'" *Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1064 (2d Cir.1979).

■ Here, plaintiffs allege that their failure to produce in a timely manner the audiotape requested by defendants was not a willful violation of the discovery rules. The Court will not concern itself with that factual determination, however, because Fed. R.Civ.P. 37(d) applies even in cases not rising to the level of willfulness. *See* 8A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2291 (1994). Plaintiffs in this case, or their attorneys, clearly were at least negligent or reckless both in erasing one side of the tape and in subsequently misplacing the tape. The presence or absence of willfulness does remain relevant in the choice of sanction, but the Court has discretion to impose some penalty regardless of the reason for the discovery violation. *See SEC v. Research Automation Corp.*, 521 F.2d 585, 588–89 (2d Cir.1975).

Plaintiffs do not dispute the Court's authority to impose sanctions for discovery violations and previously have offered to stipulate to the imposition of some penalty. Not surprisingly, plaintiffs go to great lengths to persuade the Court to limit the extent of their punishment. They argue, *inter alia*, that their recent discovery of the tape's location "is relevant to the pending sanctions motion." (Letter from Pl.'s Att. Mishler to the Court of 9/26/95 at 1.) Plaintiffs apparently believe that all is well now that the

1. N.Y. Real Prop. Law § 236.

long-sought-after tape is available for inspection.

■ Again, defendants seek dismissal of the Amended Complaint or, alternatively, preclusion of testimony by plaintiffs regarding either recorded conversation. Plaintiffs, on the other hand, would at most have the Court exclude the testimony of the white "tester" from the second conversation. Plaintiffs initially argue that the proposed sanction of dismissal is "preposterous" in light of the circumstances of this case. (Pls' Mem.Opp.Sanc. at 21.) While refraining from such hyperbole, the Court is inclined to agree with plaintiffs that dismissal of the Complaint is not warranted here. Use of dismissal as a sanction for failure to provide discovery is limited to cases involving willfullness or bad faith on the part of a disobedient party. *Altschuler v. Samsonite Corp.*, 109 F.R.D. 353, 356 (E.D.N.Y.1986). Defendants simply have not come forward with sufficient evidence of sheer obstinacy or other bad faith on the part of plaintiffs for the Court to be comfortable with such a drastic remedy.

■ In an advocate's attempt to avoid any sanction, plaintiffs also downplay the relevance and significance of the conversations recorded on the missing audiotape. First, plaintiffs claim that the availability of the tape is of "absolutely no relevance" as it pertains to the June 25, 1992, telephone conversation because both participants—plaintiff Haskins and defendant Telda Venturi—give the same account of the conversation. (Pls' Mem.Opp.Sanc. at 22.) Second, while acknowledging some differences between the accounts given by Ms. Venturi and the "tester" of the second conversation on the tape, plaintiffs claim that the conversation "has no bearing" on the issues of liability or damages. (*Id.* at 23.)

The Court is not convinced by the argument that a tape adamantly requested by defendants, and which the Court has not yet heard, is of no concern because, essentially, it wasn't really important in the first place. In fact, the Court believes that the conversations recorded on the tape could very well be significant in the outcome of this case. The Court also is not convinced by the argument that now that plaintiffs have offered the tape to defendants for inspection, sanctions are no longer warranted. Defendants have gone to considerable time and expense in pursuing their discovery requests and these pending motions. Furthermore, by (1) erasing one side of the audiotape and (2) "misplacing" the tape for over six months, plaintiffs and their attorneys have failed to exercise the care required in all cases for the handling of discoverable evidence.

In regard to the first recorded conversation, that between plaintiff Haskins and defendant Telda Venturi, the Court will err on the side of caution and deny defendant's motion for preclusion of testimony. The Court concedes that, as least in regard to the actual words spoken, the parties do not significantly differ in their accounts of what took place. The inferences drawn by each party from the conversation, however, almost certainly are different. Yet where these inferences are concerned, the tape will speak for itself. In other words, provided the tape is of sufficient quality, a jury will be able to determine which inferences are more reasonable based on, for example, the tone of either Mr. Haskins' or Ms. Venturi's voice. Now that the tape is available, the pursuit of justice requires that a jury be permitted to hear the evidence and draw its own conclusions.

■ Plaintiffs admit that they erased the tape of the second recorded conversation, that between the white "tester" and Ms. Venturi, immediately after it took place. Plaintiffs consequently damaged or destroyed relevant evidence—although they may or may not have realized they were doing so at the time. Of course, plaintiffs and their counsel also acted improperly when they failed, for whatever reason, to produce the tape itself for over six months. As a result, the Court will grant defendants' motion for preclusion of testimony related to the second conversation. The Court believes that some sanction is necessary in order to fulfill the goals of Fed.R.Civ.P. 37. Plaintiffs must be precluded from offering any testimony in regard to the second conversation so that they will not benefit from their failure to comply with the spirit of the federal discovery rules. Plain-

tiffs and their counsel also must be sanctioned for the at least negligent manner in which they have acted. Finally, by sanctioning plaintiffs here, the Court hopes to deter plaintiffs and litigants in other cases from similar transgressions in the future. *See Update Art,* 843 F.2d at 71.

Rule 37 also provides that "[i]n lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure [to permit adequate discovery.]" Fed.R.Civ.P. 37(d). The imposition of such a sanction is necessary to fully compensate the party seeking discovery for the costs entailed by the other party's misconduct. *See Altschuler,* 109 F.R.D. at 357–358; *Wm. T. Thompson Co. v. General Nutrition Corporation, Inc.,* 593 F.Supp. 1443, 1456 (C.D.Ca.1984). In this case, plaintiffs and their counsel have presented no justifiable excuse for their failure to properly preserve and store the discoverable evidence so persistently sought by defendants. Consequently, the Court orders that plaintiffs and their counsel are jointly and severally liable for the attorneys' fees and costs defendants incurred in pursuing requests for the audiotape and the motions now at hand.

## B. PLAINTIFFS' RULE 15 MOTION

Fed.R.Civ.P. 15 dictates that "while leave to amend is to be freely given when justice so requires, the grant of leave to amend rests in the sound discretion of the court." *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC.,* 152 F.R.D. 18, 29 (S.D.N.Y.1993). Courts have properly denied leave to amend where "the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir.1990). The party seeking leave has the burden of providing satisfactory reasons for the delay. *Id.*

Plaintiffs filed this motion to amend twelve months after they filed the original Complaint, six months after they filed the first Amended Complaint, and three months after the deadline for the amendment of pleadings.

Although mere delay by itself does not provide grounds for denying leave to amend, plaintiffs have offered no explanation for the delay. Nor have they provided any explanation for failing to assert the proposed state claim in the amendment previously allowed. Apparently, in researching for the other motions presently before the Court, plaintiffs identified an additional cause of action that seemed to apply to their case.

Given the untimely filing of the motion and the lack of new information justifying the delay in adding a new claim, the Court must deny plaintiffs' motion to amend. As the Second Circuit has stated, "[a] busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim.*" *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld,* 921 F.2d 409, 418 (2d Cir.1990).

## C. PLAINTIFF'S RULE 56 MOTION

### 1. Standards for Summary Judgment

Pursuant to Fed.R.Civ.P. 56(c), a trial judge may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of informing the Court of the basis for its motion and identifying the matter that it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The substantive law determines which facts are material to the outcome of a particular case. *See Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. In determining whether summary judgment is appropriate, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

If the moving party satisfies its burden, the burden then shifts to the non-mov-

ing party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party must do more than simply show "that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355. Only when the Court finds it apparent that no rational finder of fact could find in favor of the non-moving party because the evidence to support its case is so slight should summary judgment be granted. *Gallo v. Prudential Residential. Servs., Ltd.,* 22 F.3d 1219, 1223 (2d Cir.1994).

### 2. Section 3604(a)

Plaintiffs' motions are based on the 1988 Amendments to the Fair Housing Act ("FHA"), which extended to families with children the same protections that the FHA previously had afforded principally to minorities and members of religious groups. As amended, 42 U.S.C. § 3604(a) makes it unlawful "[t]o refuse to sell or rent after making a bona fide offer, or to refuse to negotiate for the sale or rental of . . . a dwelling to any person because of race, color, religion, sex, *familial status,* or national origin." 42 U.S.C. § 3604(a) (emphasis added). "Familial status" is defined to include "one or more individuals (who have not attained the age of 18 years) being domiciled with" a parent or guardian. 42 U.S.C. § 3602(k).

■ Despite plaintiffs' arguments to the contrary, the burden-shifting procedure employed in examining a Section 3604(a) claim is well-settled in the Second Circuit. *Soules v. U.S. Dep't of Housing & Urban Dev.,* 967 F.2d 817, 822 (2d Cir.1992). To make out a *prima facie* discriminatory housing refusal case, a plaintiff must show that he was a member of a statutorily protected class who applied for and was qualified to rent housing and was rejected although the housing remained available. *See Robinson v. 12 Lofts Realty,* 610 F.2d 1032, 1038 (2d Cir.1979) (applying *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to Section 3604(a) claim). In stating a claim under the FHA, a plaintiff need allege "only discriminatory effect, and need not show that the decision complained of was made with discriminatory intent."

*United States v. Yonkers Bd. of Educ.,* 837 F.2d 1181, 1217 (2d Cir.1987), *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988).

■ By satisfying the elements of a *prima facie* case a plaintiff is not guaranteed recovery, however. The Court still must allow the defendant an opportunity to explain whether his actions were motivated by permissible considerations rather than, for example, the plaintiff's familial status. *Soules,* 967 F.2d at 822. If the defendant does in fact come forward with evidence in his defense, the Court will allow a plaintiff to demonstrate, if possible, that the defendant's stated reason for denying the plaintiff's application for housing was pretextual. *Id. See also Fair Housing Council of Orange County v. Ayres,* 855 F.Supp. 315, 318 (C.D.Cal.1994).

In examining a defendant's justification, the Court "will view skeptically subjective rationales concerning why he denied housing to members of protected groups." *Id.* The rationale behind this scrutiny is that "clever men may easily conceal their motivations." *United States v. City of Black Jack,* 508 F.2d 1179, 1185 (8th Cir.1974), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 694 (1975). However, among the circuits, the Second Circuit has stated a relatively light burden for defendants. Rather than require a defendant to show use of "the least restrictive means to achieve a compelling business standard," as in the Ninth Circuit, a defendant must show only that the challenged policy was established for a legitimate, nondiscriminatory business reason. *Ayres,* 855 F.Supp. at 318. Thus the Court is likely to accept subjective explanations where a defendant provides objective evidence indicating that truth lies behind his assertions of nondiscriminatory conduct. *Soules,* 967 F.2d at 822.

■ In the present case, the Court finds that plaintiffs have established a *prima facie* case under the FHA. The record establishes that in June, 1994, (1) plaintiffs had three children under 18 years old; (2) they attempted to rent a three-bedroom house in Latham, New York; (3) they were otherwise

qualified to rent the house; (4) defendants denied the house to plaintiffs, knowing of their familial status; and (5) the house eventually was rented to a woman without a child under 18 years old. Accordingly, the Court turns its attention to defendants' alleged legitimate, nondiscriminatory reason for not renting the Latham house to plaintiffs.

Defendants, who admit that they had no intention of renting the house to plaintiffs once they learned the size of plaintiffs' family, insist that their motives were nondiscriminatory. Defendants argue instead that they have established a "reasonable occupancy limitation for the house ... whereby they will not rent the house to families or groups of five (5) or more people at one time, whether those families or groups include children or not." (Defs' Reply Mem.Opp.Summ.J. at 14.) According to defendants, this occupancy limitation is facially neutral and was developed "based on their belief that the house [is] too small" for five or more people. (*Id.*) Moreover, defendants also allege that they formulated the occupancy policy "in response to their negative experience with a group of five tenants" who previously had rented the property and allegedly caused damage. (*Id.*)

Plaintiffs counter that the statements of defendant Telda Venturi reveal that defendants' actual policy is not to refuse families with too many *people,* but to refuse families with too many *children.* Accordingly, plaintiffs allege, defendants' policy is not facially neutral and constitutes "explicit and unlawful familial status discrimination." (Pls' Reply Mem.Supp.Summ.J. at 4.) Plaintiffs point to Ms. Venturi's deposition, which they believe contains "repeated and unambiguous articulations of her unlawful discriminatory policy." (*Id.* at 3.) For example, when asked whether the "crucial factor" for her in not renting to plaintiffs was that they had three children, Ms. Venturi answered "Yes." (T. Venturi Dep. at 101.) When asked if it was the distinction between two children and three children that was significant to her, Ms. Venturi again responded "Yes." (*Id.* at 102.) Finally, plaintiffs note that Ms. Venturi testified that she always asks prospective tenants, "[H]ow many children do you have?" and if

there are "too many" she doesn't even give an appointment. (*Id.* at 80.)

The Court initially recognizes that reasonable occupancy limitations have been considered a legitimate, nondiscriminatory business reason sufficient to rebut a plaintiff's *prima facie* case under the FHA. *See Glover v. Crestwood Lake Section 1 Holding Corp.,* 746 F.Supp. 301, 309–10 (S.D.N.Y.1990). The United States Department of Housing and Urban Development ("HUD"), in interpreting the FHA, has stated that

> there is no basis to conclude that Congress intended that an owner or manager of dwellings would be unable in any way to restrict the number of occupants who could reside in a dwelling. Thus, [HUD] believes that in appropriate circumstances, owners and managers may develop and implement reasonable occupancy requirements based on factors such as the number and size of sleeping areas or bedrooms and the overall size of the dwelling unit. In ... connection with a complaint alleging discrimination on the basis of familial status, [HUD] will carefully examine any such nongovernmental restriction to determine whether it operates unreasonably to limit or exclude families with children.

24 C.F.R. Ch. 1, Subch. A, App. 1, p. 865 (1994). As a result, if defendants have in fact alleged a reasonable occupancy limitation they have satisfied their burden under *Soules,* 967 F.2d at 822.

For purposes of this summary judgment motion, the Court consequently must determine whether a genuine issue of material fact exists in regard to the reasonableness of the occupancy limitation articulated by defendants. If the restriction is—without question—not reasonable, summary judgment for plaintiffs is appropriate because defendants will have failed to rebut plaintiffs' *prima facie* FHA case. One way that the restriction clearly would not be reasonable would be if the actual occupancy limitation was not facially neutral. In other words, summary judgment is appropriate if plaintiffs have demonstrated that, despite their claims to the contrary, defendants' policy was not to rent to families with too many children rather than not to rent to families with too many

people. Apparently, plaintiffs believe they have satisfied this burden.

The Court takes issue, however, with plaintiffs' contention that Ms. Venturi's statements are so unambiguous that summary judgment is warranted here. Based on a close reading of her deposition, the Court holds that a reasonable jury *could* find each of her controversial statements completely consistent with an occupancy limitation of five people, instead of merely an arguably impermissible limitation of three children.

Ms. Venturi stated essentially that the "crucial factor" for her in not renting to plaintiffs was that they had three children. However, in addition to the interpretation offered by plaintiffs, this statement could reasonably be interpreted to mean that the number of plaintiffs' children was "crucial" because it put their family size in conflict with the alleged occupancy limitation of five people. The same rationale applies to Ms. Venturi's admission that the distinction between two and three children was significant; three children would entail five or more people in plaintiffs' case, and two children would not. Although it could be implied, Ms. Venturi did not explicitly state that the distinction between two and three children always was significant to her, but only that it was significant in regard to plaintiffs.

Finally, while Ms. Venturi stated that she always asks prospective tenants "[H]ow many children do you have," she also stated in the same breath that she asks "[H]ow big is the family?" (*See also* T. Venturi Dep. at 29 ("I always ask how big is the family because the house is small.").) Admittedly, the former question might represent a policy not to rent to families with a certain number of children and indicia of unlawful discrimination based on familial status. The latter question, however, might represent a policy not to rent to groups with a certain number of people and a potentially reasonable occupancy limitation. With two possible and conflicting meanings, this statement consequently is not so unambiguous that it is unnecessary to have a jury determine which interpretation is more appropriate.

The Court is not, of course, taking a position at this time on the issue of whether defendants' occupancy policy was facially neutral. On the contrary, plaintiffs simply have failed to demonstrate that no genuine issue of material fact exists in regard to whether the policy was facially neutral. As a result, the Court cannot grant summary judgment for plaintiffs based on that rationale.

Plaintiffs also contend that even if the occupancy limitation articulated by defendants refers to people, instead of children, the policy is unreasonable because it is has no objective basis. Defendants' policy is not, according to plaintiffs, "based on a local or state occupancy limitation, or a limitation premised on a specific and demonstrated lack of sufficient space for more than a specified number of persons." (Pls' Reply Mem.Supp. Summ.J. at 5.) Plaintiffs allege that "[a]ll defendants offer is their wholly subjective, self-serving, and conclusory assertion that the home is too small for more than four occupants." (*Id.*) Because defendants have failed to provide the Court more detailed information concerning the size of the Latham house, plaintiffs submit that defendants' assertions should not be accorded any weight.

The Court believes that plaintiffs have misinterpreted defendants' burden under *Soules*, 967 F.2d at 822. Defendants previously have stated, and argue for purposes of these motions, that the Latham house—and more particularly the bedrooms—is "too small." (*E.g.*, T. Venturi Dep. at 33.) Although limited in probative value, such statements do constitute evidence. Moreover, "[b]y producing *evidence* (whether ultimately persuasive or not) of nondiscriminatory reasons, defendants sustained their burden of production" pursuant to *Soules. See St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993) (emphasis in original). If defendants' statements "[were] *taken as true,* [they] would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *Id.* (emphasis in original). Defendants have satisfied their very light burden under *Hicks*.

From a perspective based purely on the standards of Rule 56, the Court finds that plaintiffs have not even demonstrated, as initially they must, that no genuine issue of material fact exists that would require a trial. *See Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2553. Again, in determining whether summary judgment is appropriate, the Court must resolve all ambiguities, and draw all reasonable inferences, against the moving party. *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355. While defendants here have not produced, *arguendo*, specific dimensions of the bedrooms and house, neither have plaintiffs. In essence, plaintiffs only have offered, in contrast to defendants, that the house is "big enough" for five people, without additional evidence.[2] Resolving all ambiguities against plaintiffs, such production is insufficient—even without substantial rebuttal by defendants—to convince the Court that no reasonable jury could find that the house was not in fact big enough.

██ Plaintiffs finally argue that because defendants failed to comply to the letter of Local Rule 7.1(f),[3] they must be deemed to have admitted the nine statements of material fact described by plaintiffs in their own Rule 7.1(f) papers. It seems that the reply papers defendants served on plaintiffs did not contain any statement pursuant to the rule; only three weeks later did defendants serve such a statement. On a perfunctory analysis the Court is inclined to deny plaintiffs' request, because they appear to seek lenience in regard to their own tardiness and stringency in regard to defendants' failings. However, plaintiffs are correct; defendants' Rule 7.1(f) statement was untimely, just as plaintiffs' motion to amend was untimely. Thus while the motion to amend was denied, plaintiffs' request that defendants be deemed to have admitted the nine relevant statements of material fact is GRANTED. Unfortunately for plaintiffs, this ruling does not affect the Court's disposition of plaintiffs' summary judgment motions. None of the nine statements of material fact contradict the Court's prior analysis.[4]

The Court does not rule on the issue of whether defendants' house could accommodate five or more people. Rather, plaintiffs simply have failed once more to demonstrate that no genuine issue of material fact exists in regard to whether the occupancy limitation proffered by defendants was reasonable. As a result, the Court cannot grant summary judgment for plaintiffs on their 42 U.S.C. § 3604(a) claims.

### 3. Section 3604(c)

██ Plaintiffs also have moved for summary judgment on their claim that defendants' statements that plaintiffs' family was too large to live in the Latham house violated 42 U.S.C. § 3604(c). Section 3604(c) makes it unlawful "[t]o make, print, or publish ... any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, *familial status*, or national

---

2. Plaintiffs apparently rely on "[HUD's] rule of thumb that an occupancy policy of two persons per bedroom is presumptively reasonable" in support of their assertion that defendants' three-bedroom house can accommodate, as a matter of law, plaintiffs' five-member family. *See United States v. Badgett*, 976 F.2d 1176, 1179 (8th Cir. 1992). The Court sees two problems with plaintiffs' reasoning. First, the HUD rule does not render other occupancy policies presumptively unreasonable, but just suspect. *Id.* Second, the HUD regulations are not binding here, and the Court declines to institute such a conclusive mechanical test.

3. Local Rule 7.1(f) of the Northern District of New York requires a party moving for summary judgment to serve a statement with the moving papers that sets forth concise descriptions of those material facts supporting summary judg-

ment as to which the movant contends no genuine issue exists. The rule further mandates that the nonmovant submit a similar statement indicating those material facts as to which the nonmovant contends genuine issues exist. All material facts set forth in the moving parties statement shall be deemed admitted unless controverted by the statement served by the opposing party.

4. Even Material Fact # 6, that "[d]efendants refused to rent the home to plaintiffs because plaintiffs have three minor children who reside with them," is not problematic. (See Pls' Rule 7.1(f) Stmnt. at 1.) As the Court has stated, a reasonable jury *could* find such a statement to be consistent with an occupancy limitation of five people, instead of merely an impermissible limitation of three children.

origin." 42 U.S.C. § 3604(c) (emphasis added). In determining whether a statement "indicates" impermissible discrimination, the Court must ask whether it suggests to an ordinary listener that people with a particular familial status are preferred or dispreferred for the housing in question. *See Ragin v. New York Times Co.,* 923 F.2d 995, 999 (2d Cir.), *cert. denied,* 502 U.S. 821, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991). The ordinary listener "is neither the most suspicious nor the most insensitive of our citizenry." *Id.* at 1002.

 Thus the Court analyzes whether the ordinary listener, in light of all the circumstances, would have interpreted Ms. Venturi's statements to suggest an impermissible preference based on familial status. *Soules,* 967 F.2d at 824. Where a court is charged, as here, with ascertaining the message sent "by isolated words rather than a series of ads or an extended pattern of conduct," evidence of the defendant's intent may be relevant to a factual determination of the message conveyed. *Id.* at 825. Consequently, for many of the reasons elucidated in its discussion of plaintiffs' Section 3604(a) claims, the Court finds that a genuine issue of material fact exists on this question. Reasonable minds could differ on whether Ms. Venturi's statements would lead the ordinary listener to believe that defendants would not rent to families with more than two children or that defendants would not rent to families with more than five members.

More analysis is necessary in regard to defendants' intent in making the relevant statements to plaintiffs and the ultimate issue of how the ordinary listener would interpret the statements. As a result, the Court must deny summary judgment for plaintiffs on their Section 3604(c) claim.

### III. CONCLUSION

For all the foregoing reasons defendants' motion for discovery sanctions is GRANTED IN PART. Plaintiffs are hereby precluded from offering any testimony in regard to the conversation between the white "tester" and defendant Telda Venturi. Moreover, plaintiffs and their counsel are jointly and severally liable for reasonable attorneys' fees and costs incurred by defendants in pursuit of their relevant discovery requests and present motions. Plaintiffs' motion to amend the Amended Complaint is DENIED as untimely. Finally, summary judgment in favor of plaintiffs and against defendants is DENIED because genuine issues of material fact still exist for trial.

**IT IS SO ORDERED.**