774 F.2d 706
 3 Fed.R.Serv.3d 122
 Amy STEWART, Individually and as next friend of Theresa
Michelle Stewart, Plaintiff-Appellant,
v.
Laroy FURTON; Nancy Furton; Clifford L. Furton; Wannetta
W. Furton, Guy Crosson, Defendants-Appellees.
 No. 83-5925.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 20, 1985.
Decided Oct. 8, 1985.
 
 William Bush, argued, Rural Legal Services of Tenn., Inc., Cookeville, Tenn., Lenny L. Croce, Oak Ridge, Tenn., William H. West, Memphis, Tenn., for plaintiff-appellant.
 John E. Acuff, Barnes & Acuff, Jere Logan Hargrove, argued, Cookeville, Tenn., W.A. Moody, Nashville, Tenn., for defendants-appellees.
 Before MERRITT and MARTIN, Circuit Judges, and HOGAN, Senior District Judge.*
 MERRITT, Circuit Judge.
 
 
 1
 In this housing discrimination action, plaintiff Stewart appeals from the District Court's denial of damages for a violation of the Fair Housing Act, 42 U.S.C. Sec. 3604 and 42 U.S.C. Sec. 1982. Plaintiff, the white mother of a daughter whose father is black, sued the Furtons, the owners and managers of a trailer park, and also sued Crosson, lessee of a trailer pad at the trailer park, for their failure to sublease an available trailer and paid to her and her daughter. District Judge Morton found defendants liable for violation of 42 U.S.C. section 3604(c),[1] and ordered injunctive relief. He refused, however, to assess damages against either the managers and owners or the lessee. On appeal, plaintiff argues for an award of damages as to all defendants.
 
 I.
 
 2
 On July 1, 1982, Defendant Crosson leased a mobile home lot from defendants Clifford and Wannetta Furton, who managed the Suburban Trailer Court in Cookeville, Tennessee. The trailer park was owned by the Furtons' son and daughter-in-law, LaRoy and Nancy Furton. Crosson moved his trailer onto the lot and then advertised it for lease with an ad in the Cookeville newspaper.
 
 
 3
 On August 1, 1982, plaintiff Stewart responded to the ad and met with Crosson at the trailer park to discuss the rental. Plaintiff was accompanied by her infant daughter and her daughter's great-aunt, who is black.
 
 
 4
 During this initial meeting, Stewart told Crosson that she had a HUD Section 8 rental assistance certificate, which required an inspection before the rental could be approved. 42 U.S.C. Sec. 1437f (1982). Crosson indicated his interest in renting to plaintiff, and said he would be open to talk with the Director of HUD's Section 8 program concerning plaintiff's renting his trailer.
 
 
 5
 After plaintiff and her friend left, Crosson walked over to talk to the Furtons at their nearby trailer. Having seen the Stewarts and their friend, the Furtons asked Crosson if they were going to rent his trailer, to which he responded, "they might." The Furtons then told Crosson that they did not want any black people as tenants in the trailer park, because of the fear of whites moving out. Crosson responded, "It's better to rent to them than get involved in a lawsuit." Dist.Ct.Op. p. 3.
 
 
 6
 One or two days after showing plaintiff the trailer, Crosson rented it to a white male. Despite this, on August 12, he executed a form permitting a Section 8 inspection of the trailer. He did not inform plaintiff that he had already rented his trailer to someone else by this time.
 
 
 7
 On August 16, 1982, Stewart accompanied the HUD supervisor to make the Section 8 inspection. Although Crosson had told Stewart that he would leave a key to the trailer in a designated spot before the inspection, he did not do so. Plaintiff asked the Furtons if they knew the whereabouts of an available key. While walking back to Crosson's trailer with plaintiff, Clifford Furton told Stewart that Crosson had planned to rent to a black person, but that the Furtons did not allow black tenants in the trailer park.
 
 
 8
 Because no key was available, the supervisor left without making the necessary inspection. Stewart called Crosson on or about August 18, 1982, to find out why a key had not been left; during this conversation, Crosson informed Stewart that he had rented the trailer to someone else. Crosson told plaintiff he had decided that she would not be happy at the Suburban Trailer Court. Stewart responded that she felt the Furtons were prejudiced, and Crosson agreed. Crosson then told her that he had made a deposit on another trailer that he would locate and rent to her elsewhere. Crosson did not follow through with this statement.
 
 
 9
 Plaintiff Stewart filed a complaint against the Furtons under 42 U.S.C. Sec. 3610 with the U.S. Department of Housing and Urban Development on October 7, 1982. HUD investigated the complaint and attempted a conciliation on April 13, 1983. HUD then determined that conciliation was unsuccessful on June 28, 1983. Having exhausted her administrative remedies, plaintiff filed this lawsuit against all the Furtons and Crosson.
 
 
 10
 Judge Morton determined that the defendants had committed racial housing discrimination. He issued permanent injunctions against all defendants, restraining them from further violations of Title VIII or 42 U.S.C. Sec. 1982. His injunction also required them to: offer the plaintiff a dwelling if available, post notices of equal housing opportunity, instruct any present or future employees to obey the order, and file with the court objective, non-racial standards for the processing and approval of future rental applications. The court also taxed costs and attorney fees against the defendants as follows: 80% against Crosson and 20% against the Furtons.
 
 
 11
 The Court, however, refused to assess damages against any of the defendants. Against the Furtons, it concluded that, since the written lease between Crosson and the Furtons contained no approval or veto powers, the Furtons had no legal control over the rental of Crosson's trailer. The Furtons, therefore, were not liable to plaintiff for any damages suffered by virtue of Crosson's refusal. The Court further suggested that a reading of Sec. 3604(c) that proscribed statements made by people with no control over the property at issue would be unconstitutional under the First Amendment. The Court went on to conclude that Crosson's discriminatory refusal to rent was solely a product of his own prejudice. Finally, regarding Clifford Furton's statement to Stewart herself at the inspection visit, the Court apparently reasoned that the statement violated Sec. 3604(c) insofar as it referred to property under the Furtons' control, but that Stewart had suffered no damages from the statement. The Court did not apply any First Amendment analysis to this latter statement. The Court then enjoined the Furtons "from making any discriminatory statements with regard to the sale or rental of any housing under their control" because "such statements by those in the business of selling or leasing housing are illegal and may be enjoined whether or not they injure anyone." Dist.Ct.Op. at 6.
 
 
 12
 The Court refused to assess damages against Crosson since plaintiff's complaint had expressly prayed for damages against only the Furtons, not Crosson. This conclusion was expressed: "In summary, the plaintiff has made out a classic case of discrimination against Crosson.... Unfortunately, the plaintiffs have not sued Crosson for damages. We shall enjoin him from ever discriminating in the sale or lease of property in the future." Dist.Ct.Op. at 11.
 
 II.
 
 13
 Stewart's claim for damages against the Furtons is based on two incidents. First, she asserts damages as a result of Clifford Furton's statement to Crosson that the Furtons did not allow black tenants in the trailer park because they feared that white tenants would move out. She argues that Furton's statement contributed to Crosson's refusal to rent to her. The damages for this claim are based on Stewart's having to accept less desirable housing for herself and her child. Second, she asserts a claim for damages based on Clifford Furton's second statement, the statement to her during the inspection visit that Crosson had earlier intended to rent to a black, but that the Furtons did not allow blacks in the trailer park. In this claim based on the second statement, Stewart alleges damages from emotional distress and humiliation.
 
 
 14
 On the leasing control issue, the Court relied solely on the absence of any veto or approval power in the written lease, an integrated instrument, to conclude that the Furtons had "absolutely no power to control the disposition of the real estate." Dist.Ct.Op. at 9. This conclusion is in error. Although the lease contained no express veto power, it also did not contain a durational term. Thus, under Tennessee law, the leasehold functioned as a periodic tenancy, terminable by the landlord in this case with one month's notice. Noel v. McCrory, 47 Tenn. 623 (1868); Smith v. Holt, 193 S.W.2d 100 (Tenn.Ct.App.1945). The Furtons, therefore, had effective control over Crosson's rental property; they were free to terminate the lease at any time with simply a month's notice. The absence of a durational term in this lease distinguishes this case from Kroger Co. v. Chemical Securities, 526 S.W.2d 468 (Tenn.1975), relied on by the District Court for the proposition that the Furtons had "neither the right nor the power to evict Crosson for renting to whomever he wished." Dist.Ct.Op. at 9.
 
 
 15
 Second, the record clearly indicates that the Furtons themselves believed that they had control over the premises and control over whether Crosson rented to a black tenant. The Furtons' expectation was that Crosson was to bring tenants to them for an interview prior to subleasing. Clifford Furton, referring to the white male to whom Crosson actually leased his trailer, made this statement: "... And I wouldn't sign any papers for him because I told him the man has to come out and be interviewed like we do anybody else renting a trailer in the part.... Q. You told him you all would have to interview them before he sublet to them? A. That's right. We told him, and he never brought us anybody to interview." Trans. at 112.
 
 
 16
 This statement clearly indicates that the Furtons believed they could screen and reject tenants whom they considered undesirable. Coupled with Clifford Furton's statement to Crosson indicating that they did not allow black tenants in the trailer park, the only logical conclusion is that the Furtons believed they could exercise control over the premises and Crosson's activities. This perception was shared by Stewart.
 
 
 17
 Given these conclusions, the District Court's conclusion as a matter of law that the Furtons exercised no control over Crosson's rental decision is error. As landlords, the Furtons had actual control over the rental of Crosson's trailer. In the specific context of that rental, the Furtons expressed an intention to exercise their control in a discriminatory way. Their control of the premises together with their statement of intention, coupled with the subsequent race-conscious refusal to rent, is part of one chain of events that renders the Furtons liable for damages under Sec. 3604(c) of the Fair Housing Act.
 
 
 18
 This liability is independent of any factual finding by the District Court on whether their statements influenced Crosson's decision. The Fair Housing Act simply does not countenance insulating a landlord from liability for housing discrimination where he controls an estate in land and exercises his control to refuse to rent to blacks. The Furtons refused to rent the ground on which the trailer was located to plaintiff and their refusal to rent the trailer pad violated the Act. We need not address the question of whether the District Court erred as a factual matter in finding that the Furtons did not influence Crosson to refuse to rent the trailer because his refusal was independent of their statements. We, therefore, reverse that portion of the District Court's judgment denying damages against the Furtons, and remand for an assessment of damages incurred from the refusal to rent.
 
 
 19
 Plaintiff also argues that, as an independent claim for relief, the statement made to her directly by Clifford Furton during her second visit to the Suburban Trailer Park violated Sec. 3604(c) of the Fair Housing Act. The District Court held that this statement violated Sec. 3604(c) insofar as it related to property under the Furtons' control. Because plaintiff did not seek to rent property under the Furtons' control, however, the Court found that she suffered no damages.
 
 
 20
 Given our holding that the Furtons did exercise control over Crosson's trailer rental, it is clear that Furton's second statement acted as a continuation and confirmation of the previous act of housing discrimination.[2] Seen in this light, plaintiff can assert damages for emotional distress based on this statement, since it related to a specific discriminatory transaction. Under Curtis v. Loether, 415 U.S. 189, 197, 94 S.Ct. 1005, 1009-10, 39 L.Ed. 260 (1974), a plaintiff who "proves unlawful discrimination and actual damages ... is entitled to judgment for that amount." In Brandon v. Allen, 719 F.2d 151, 155 (6th Cir.1983), rev'd on other grounds sub nom. Brandon v. Holt, --- U.S. ----, 105 S.Ct. 873, 83 L.Ed.2d 878 (1984), we held that damages from constitutional torts would lie for "a wide array of intangible 'dignitary interests,' " (citation omitted) such as those alleged by the plaintiff here. The damages rationale of Brandon v. Allen, supra, applies to this statutory housing discrimination case.
 
 III.
 
 21
 Stewart bases her claim for damages against Crosson on the theory that, even though her complaint did not explicitly pray for damages against Crosson, Rule 54(c) mandates that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in its pleadings." Since the District Court expressly found that Crosson had committed "classic housing discrimination," Stewart argues on appeal that she is entitled to damages against him.
 
 
 22
 We reject plaintiff's argument on appeal that the District Court erred in refusing to award damages against Crosson under Fed.R.Civ.P. 54(c). The mandate of Rule 54(c) has been deemed applicable only when there is no prejudice to the defendant as a result of the plaintiff's failure to plead certain relief. See Albermarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). The reason for this rule is that, despite the broad sweep of Rule 54(c), "a party may not be 'entitled' to relief if its conduct of the cause has improperly and substantially prejudiced the other party." Id. at 424, 95 S.Ct. at 2374-75.
 
 
 23
 A rule 54(c) motion is committed to the sound discretion of the trial court. See C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure Sec. 2662 (1983). Here, Crosson proceeded to trial without his attorney present. He argues on appeal that he did so with the belief that plaintiff would not seek damages against him, based on alleged assurances and the absence of a prayer for damages against him in plaintiff's complaint. Given the potential for prejudice in this case, we cannot say that the District Court's denial of plaintiff's Rule 54(c) motion was an abuse of discretion. We, therefore, affirm that part of the District Court's judgment which denies plaintiff damages as to Crosson.
 
 
 24
 Accordingly, the judgment of the District Court is reversed in part, affirmed in part, and remanded for proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Timothy S. Hogan, Senior Judge of the United States District Court for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Section 3604(c) provides:
 [i]t shall be unlawful--
 * * *
 (c) to make, print, publish or cause to be made, printed, or published any notice, statement, or advertisement that indicates any preference, limitation, or discrimination based on race, color, religion, sex, or national origin, or an intention to make any such preference, limitation, or discrimination.
 
 
 [2]
 We need not address the pure speech issue raised by the question whether, if the second statement by Furton had not related to a specific discriminatory and illegal transaction, his speech would have been protected under the First Amendment. See Pittsburgh Press Co. v. Human Relations Commission, 413 U.S. 376, 388, 93 S.Ct. 2553, 2560, 37 L.Ed.2d 669 (1973)