**FAIR HOUSING COUNCIL OF ORANGE COUNTY, INC.; Kevin Rowatt; Sofia Rowatt; Jeffrey Goeser and Donna Goeser, individually and on behalf of the General Public, Plaintiffs,**

v.

**Donald AYRES, individually and dba Las Brisas Apartments, Defendant.**

No. SACV 93–149–GLT[SH].

United States District Court, C.D. California.

June 16, 1994.

Christopher Brancart, Brancart & Brancart, Pescadero, CA, for plaintiffs.

Law Offices of Kent G. Snyder, Kent G. Snyder, Philip N. Friedman, Irvine, CA, for defendant.

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION

TAYLOR, District Judge.

This case interprets the 1988 amendments to the federal Fair Housing Act, and its provision protecting familial status, 42 U.S.C. § 3604(b). The court holds that a showing of discriminatory intent is not necessary for plaintiffs to state a *prima facie* case of housing discrimination based on familial status. The court also holds that, to rebut the case, a defendant must show that the policy in question is the least restrictive means to achieve a compelling business purpose.

### I. *BACKGROUND*

Las Brisas Apartments is a condominium complex in Huntington Beach, California that defendant owns and rents as apartments. The complex consists of 76 identical two-bedroom, one-bathroom units of approximately 950 square feet. Defendant enforces a numerical occupancy restriction of two persons per unit.

The Rowatts contacted the resident manager of Las Brisas to ask about rental of a two-bedroom apartment. The manager told them that, although there were units available, the Rowatts could not apply because they had a child living with them and therefore constituted a three-person household.

The Goesers were living at Las Brisas when Mrs. Goeser became pregnant. The resident manager told the Goesers they would have to move following the birth of their child because of the occupancy restriction. After the Goesers' son was born, the resident manager told the Goesers that they would be evicted if they did not vacate their apartment voluntarily. The Goesers moved soon afterward.

The Rowatts and Goesers complained to the Fair Housing Council of Orange County, a non-profit corporation that promotes equal opportunity in the renting, purchasing and financing of housing. Among its activities, the Fair Housing Council investigates allegations of discrimination and conducts tests of housing facilities to determine whether equal opportunity in housing is provided.

Since 1989, the Fair Housing Council had received and investigated several complaints from persons regarding the discriminatory operation of defendant's rental premises. It repeatedly advised defendant that his policy of enforcing a numerical occupancy restriction of two persons per apartment discriminated against families with children.

Plaintiffs filed this lawsuit for monetary, declaratory and injunctive relief. They alleged violations of the federal Fair Housing Act, the California Business and Professions Code, the California Unruh Act, and negligence in failing to train employees in the requirements of state and federal fair housing laws. Plaintiffs now move for summary adjudication of the liability portion of the first cause of action based on the federal Fair Housing Act.

### II. *DISCUSSION*

Congress passed the Fair Housing Act as Title VIII of the Civil Rights Act of 1968, Pub.L. 90–284, 82 Stat. 83. The Act initially prohibited discrimination on the basis of race, color religion, or national origin. Congress extended protection to familial status in the Fair Housing Amendments Act of 1988, Pub.L. 100–430, 102 Stat. 1620. The Act now makes it unlawful

[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(b).

Discrimination is defined to include a refusal to rent after the making of a bona fide offer, or to refuse to negotiate for the rental of, or otherwise deny, a dwelling to any person because of familial status. 42 U.S.C. § 3604(a).

Familial status is defined as one or more persons under the age of 18 domiciled with one or more parents or other legal custodians. The protection also applies to pregnant women or persons in the process of securing legal custody of any individual who has not attained the age of 18. 42 U.S.C. § 3602(k) (1994).

### 1. *Showing required for prima facie case.*

■ To make a *prima facie* case for discriminatory housing refusal, plaintiffs first must show that they are members of a statutorily protected class who applied for and were qualified to rent or purchase housing, and were rejected although housing remained available. 42 U.S.C. §§ 3604(a)(c) (1994). At issue is whether plaintiffs must also demonstrate defendant's intent to discriminate based on plaintiffs' membership in that class.

The Ninth Circuit has not yet ruled whether a plaintiff must show a defendant's intent to discriminate in a familial discrimination case.[1] It has, however, touched on the issue of the showing required in a race discrimination fair housing case. In *Keith v. Volpe,* 858 F.2d 467 (9th Cir.1988), *cert. denied,* 493 U.S. 813, 110 S.Ct. 61, 107 L.Ed.2d 28 (1989), the court implied that proof of intent is not re-

quired to establish a violation. *Id.* at 482–483.

Other circuits have split on whether intent must be proven. The Third and Eighth Circuits have held that proof of discriminatory effect alone is always sufficient to establish a violation of the Fair Housing Act. *See Resident Advisory Board v. Rizzo,* 564 F.2d 126, 146–148 (3d Cir.1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1457, 1458, 55 L.Ed.2d 499 (1978) ("[w]e conclude that, in Title VIII cases, by analogy to Title VII cases, unrebutted proof of discriminatory effect alone may justify a federal equitable response"); *United States v. City of Black Jack,* 508 F.2d 1179, 1184–85 (8th Cir.1974), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 694 (1975) ("[e]ffect, and not motivation, is the touchstone, in part because clever men may easily conceal their motivations, but more importantly, because ... 'we firmly recognize that the arbitrary quality of thoughtlessness can be as disastrous and unfair to private rights and the public interest as the perversity of a willful scheme' [citation omitted]").

The Fourth and Seventh Circuits, on the other hand, require consideration of four factors, including intent: (1) the strength of the plaintiff's showing of discriminatory effect, (2) whether there was some evidence of discriminatory intent, (3) what the defendant's interest was in taking the action complained of, and (4) whether the plaintiff sought to compel the defendant affirmatively to provide housing for minorities or merely to restrain the defendant from interfering with individual property owners who wished to provide such housing. *See Smith v. Town of Clarkton,* 682 F.2d 1055, 1065 (4th Cir.1982); *Metropolitan Housing Development Corp. v. Village of Arlington Heights,* 558 F.2d 1283, 1290 (7th Cir.1977), *cert. denied,* 434 U.S. 1025, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978).[2]

---

**1.** Plaintiff cites *City of Edmonds v. Washington State Building Code Council,* 18 F.3d 802 (9th Cir.1994), but that case is not on point. The court did not reach the merits of whether defendant's occupancy restriction complied with the substantive standards of the Act.

**2.** Recently, a Nevada district court reviewing a familial status challenge under the FHA held that

if defendant is a private entity plaintiff must prove discriminatory intent to establish a *prima facie* case. *United States v. Weiss,* 847 F.Supp. 819 (D.Nev.1994) following *Brown v. Artery Organization,* 654 F.Supp. 1106 (D.D.C.1987) (requiring discriminatory intent showing against private party and discriminatory impact showing against governmental entity).

Since *Keith* in the Ninth Circuit, the Department of Housing and Urban Development has reaffirmed that facially neutral numerical occupancy restrictions violate the Act if they have a discriminatory effect, irrespective of intent. *HUD v. Mountain Side Mobile Estates ("Mountain Side I")* Fair Housing–Fair Lending, ¶ 25,053, at page 25,492 (Nos. 08–92–0010–1 and 08–92–0011–1, Secretary of HUD, 7/13/93); *HUD v. Mountain Side Mobile Estates ("Mountain Side II")* (Nos. 08–92–0010–1 and 08–92–0011–1, Secretary of HUD, 10/20/93) (slip opinion).

In the *Mountain Side* cases, an unmarried couple and their three children, were evicted from the Mountain Side Mobile Home Park for violating the park's three-person-per-trailer occupancy restriction. *Id.* at 25,490. After several reversals and remands, the HUD Secretary held that (1) national census data could be used to establish a showing of disparate impact against families with children, and the park's numerical occupancy restriction had a discriminatory effect in violation of the Act; (2) the business necessity defense required the park to show its numerical occupancy restriction was a *necessity* of the business; and (3) the park bore the burden of demonstrating there were no less discriminatory alternatives. *Mountain Side II,* at pp. 8–12.

The *Mountain Side* decisions squarely address whether a numerical occupancy restriction violates the FHAA's family status provisions under a pure disparate impact theory, without proof of intent. Although they are administrative decisions, HUD is the federal agency charged by Congress with interpreting and enforcing the Act, and it has special expertise in housing discrimination. *See* 42 U.S.C. § 3608(a) (1994). Therefore, these decisions are entitled to great weight. *Trafficante v. Metropolitan Life Insurance Co.,* 409 U.S. 205, 210, 93 S.Ct. 364, 367, 34 L.Ed.2d 415 (1972).

Based upon the implication in the *Keith* case, the well-reasoned authority from the Third and Eighth Circuits, and the HUD opinions, the court holds that plaintiff need not show defendant's intent to discriminate based on familial status.

Plaintiffs have made a *prima facie* case. Although defendant's occupancy restriction is facially neutral because it treats adults and children similarly, and children do reside at Las Brisas, the restriction has a disparate impact on intact families with children, i.e., two parents and child. By refusing to rent to families composed of three or more persons, defendant excludes a large percent of families with children from renting apartments at Las Brisas.[3] Thus, the policy has a disparate impact on plaintiffs.

### 2. Showing required to rebut prima facia case.

After a plaintiff establishes a *prima facie* case, a presumption of illegality arises and defendant has the burden of articulating a legitimate, non-discriminatory justification for the challenged policy. *United States v. Badgett,* 976 F.2d 1176, 1178 (8th Cir.1992). Again, there is a split of authority regarding the burden defendant bears.

The Second Circuit has stated a relatively light burden: defendant must show only that the policy was established for a legitimate non-discriminatory business reason. *Soules v. HUD,* 967 F.2d 817, 822 (2nd Cir.1992).

On the other hand, the HUD *Mountain Side* rulings apply a standard akin to constitutional strict scrutiny: defendant must show use of the least restrictive means to achieve a compelling business standard. *Mountain Side II, supra,* at 8–12.

The Ninth Circuit has apparently not established a standard for the required rebuttal showing. Therefore, this Court adopts the reasoning set forth in the HUD rulings, and applies the higher "least restrictive means" standard to cases of housing discrimination based on familial status. To rule otherwise would undermine the protections provided by the statute.

Here, Defendant's offered business justification is to prevent damage and destruction to the apartments from excessive wear and tear. Defendant argues he maintains an occupancy restriction policy to keep the proper-

**3.** Plaintiffs support their showing with U.S. Census family statistics.

ty in good repair and to reduce ongoing maintenance and eventual resale costs.[4]

Defendant has not cited authority to show that such economic judgments constitute a compelling necessity, nor has defendant produced evidence to demonstrate that the occupancy restriction is closely tailored to serve his goals. He simply relies on his own subjective judgment which, notwithstanding his experience in the real estate industry, falls short of the necessary showing.

Even if defendant's damage prevention rationale were supported by independent evidence, it does not show the occupancy restriction is the least restrictive means to achieve defendant's purpose. Defendant does not deal with a number of less restrictive alternatives suggested by plaintiffs that would appear to accomplish the same goals, such as detailed maintenance requirements, more frequent inspections, higher security deposits, or more careful tenant screening. Defendant's required showing is not made.

### III. *DISPOSITION*

For the foregoing reasons, the Court GRANTS plaintiffs' motion for summary adjudication of the liability portion of the first cause of action based on the Federal Fair Housing Act.

---

4. Defendant argues that this case is unique because Las Brisas consists of condominiums which defendant has always intended to sell as individual units. Defendant only decided to lease out the units because the complex was built in the midst of a recession and he hopes to get a better price when the real estate market recovers. Defendant argues that this Court's analysis of his business purpose must be guided by the fact that the property is a different kind of asset from typical apartments where there are only limited resale concerns. However, whether a defendant is dealing in condominiums or apartments, the same law applies. The Act defines all dwellings the same, and imposes the same requirements upon their owners. 42 U.S.C. § 3602 (1994). It does not provide a "condominium exception."