Cynthia LLANOS, Sophia Marie Nazaryan, minor by her guardian ad litem, Cynthia Llanos, and the Fair Housing Council of Fresno County, Plaintiffs,

v.

ESTATE OF ANTHONY COEHLO, Estate of Frank Coehlo, Joe Coehlo, Terri Alsup, and Linda Vista Farms Partnership, individually and doing business as Del Monte Pines, Defendants.

No. CV–F–96–5246 OWW SMS.

United States District Court,
E.D. California.

Aug. 20, 1998.

Christopher Arnold Brancart, Brancart and Brancart, Pescadero, Co.

Gregory Leon Altounian, Fresno, CA.

Paul R. Hager, Harry E. Macy, Hager Trippel Macy and Jensen, Fresno, CA.

MEMORANDUM OPINION RE: PLAIN-
TIFFS' MOTION FOR SUMMARY
JUDGMENT OR SUMMARY ADJU-
DICATION OF THE ISSUES PURSU-
ANT TO FED. R. CIV. P. 56(b)

WANGER, District Judge.

## I. INTRODUCTION

Plaintiffs Cynthia Llanos and Sophia Na-zaryan[1] initiated this housing discrimination lawsuit against Defendants Joe Coehlo, Terri Alsup, Estate of Anthony Coehlo, Estate of Frank Coehlo, and Linda Vista Farms Part-nership, individually and doing business as Del Monte Pines (collectively, the "Defen-dants"), alleging Defendants discriminated against Plaintiffs on the basis of "familial status" in violation of federal and state laws.

Plaintiffs move for partial summary judg-ment or partial summary adjudication pursu-ant to Federal Rule of Civil Procedure 56, seeking a judgment that Defendants violated federal and state anti-discrimination laws by: (1) unlawfully steering tenants based on their familial status; and (2) implementing rules evincing a preference, limitation or discrimi-nation in the "provision of services and facili-ties" on the basis of familial status. Defen-dants oppose the pending motion. For the following reasons, Plaintiffs' motion for par-tial summary judgment is DENIED IN PART AND GRANTED IN PART.

## II. FACTUAL BACKGROUND

The following undisputed factual back-ground is taken from the court's Memoran-dum Opinion dated January 28, 1997, and is supplemented with further undisputed facts provided by the parties.

1. Del Monte Pines ("Del Monte") is an apartment complex with townhomes and one-, two-, and three-bedroom apartments. It is owned and operated by defendants Joe Coehlo, the estate of Frank Coehlo, estate of Anthony Coehlo, and Linda Vista Farms Partnership.

2. Terri Alsup has been the manager of Del Monte since November 1988.

3. As the manager, Ms. Alsup has gen-eral supervisory responsibility for all em-ployees, including the rental agents, ulti-mate responsibility for business decisions, and control of and is the custodian of Del Monte's books and records. Charlene Grice and Joanie Norris are rental agents em-ployed by Del Monte.

4. As a rental agent, Ms. Grice shows and rents apartments, schedules maintenance, takes complaints, collects rental payments, in addition to other administrative duties. Depo. of Grice at 19:15–22.

---

1. Sophia is Ms. Llanos's three-year-old daughter. On March 15, 1996, Ms. Llanos was appointed as Sophia's guardian ad litem.

5. Del Monte contains over 366 dwelling units. As of August 6, 1996, 100 of those units were in the "family" section and the balance were in the "adult" section. Depo. of Alsup at 103:8–15.

6. Prior to this suit, Del Monte implemented and effectuated the policy that "families live in family sections and adults live in adult sections." Depo. of Grice at 96:6–7.

7. At the time of Ms. Alsup's deposition on August 6, 1996, the rental clerks at Del Monte were instructed that "family section" apartments were to be rented to families with children under the age of 18. Depo. of Alsup at 68–69.

8. During her training, Ms. Grice was instructed that available units in the family section were to be rented only to families with children. Depo. of Grice at 43–44 (testifying Del Monte was divided into family and adult sections).

9. During her tenure as a rental agent, Ms. Grice testified that families with children living in the adult section have been asked to move to the family section. Depo. of Grice at 46:9–14.

10. The Fair Housing Council established through testers that the Defendants "maintained apartment units that excluded families with children, while maintaining over one-third of the units in which children were allowed." Defs.' Opp. To Pls.' Mot. For Summ. Jud. at 1:20–24.[2]

11. One to three months before her deposition on January 30, 1997, Ms. Alsup told Ms. Grice Del Monte would no longer maintain a family and adult section. Depo. of Grice 39:4–19.

12. As of August 6, 1996, the "family" section of Del Monte consisted of: part of 845 West Ashlan, 855 West Ashlan, 825 West Ashlan, 865 West Ashlan, part of 4081 North Fruit, part of 4065 North Fruit, and 4045 North Fruit.

13. As of August 6, 1996, the "adult" section of Del Monte consisted of: 835, 845, 855, and 865 West Ashlan, and 4073, 4065, 4081, 4111, 4044, 4025, and 4085 North Fruit.

14. When the Plaintiffs filed their complaint, they lived in Unit # 121, which was in the adult section of Del Monte.

15. During Alsup's tenure as manager, rental applicants who stated they had children were not allowed to rent an apartment in the adult section of Del Monte.

16. While Alsup has been manager, there is a "possibility" that a family with children was not rented an apartment because there was no room in the Del Monte family section.

17. On August 6, 1996 (when her deposition was taken), Alsup could only recall four families with children who currently reside in the adult section of the complex.

18. When it was determined that a family with children was in fact residing in the adult section of the complex, the procedure employed by Del Monte was to call the family and ask if they would like to transfer to the family section. Since November of 1988, about ten (10) families with children residing in the adult section were asked by the Defendants' managers if they would like to move to the family section.

19. The families with children who do reside in the adult section moved there when the mothers were pregnant but not showing or obtained custody of children after moving into the adult section.

20. Del Monte has six swimming pools in its complex. Depo. of Alsup at 102:9–24.

21. From 1988 until August 6, 1996, four of the swimming pools were reserved for adults only and the remaining two were designated family pools. *Id.* at 102:9–24, 103:4–7.

22. Children under the age of 18 were not permitted to use the adult pools. *Id.*

23. On August 17, 1995, Grachik Nazaryan submitted an application for an apartment unit at Del Monte. On his application, Mr. Nazaryan did not indicate that anyone else would be living with him.

24. Del Monte agreed to rent Unit # 121 to Mr. Nazaryan as long as he obtained a co-

---

**2.** Pursuant to a stipulation agreement between the Defendants and Fair Housing Council ("FHC"), the Defendants agreed, among other things, to pay FHC $15,000 and discontinue discriminatory rental policies based on familial status.

signer with good credit who would guarantee payment of his rent.

25. Mr. Nazaryan obtained a co-signer and rented Unit # 121.

26. Before renting the apartment, Mr. Nazaryan had agreed with Ms. Llanos that he would find an apartment for her and Sophia, rent it in his name, and allow her and Sophia to live there.

27. On September 23, 1995, Ms. Llanos submitted an application to be a co-tenant with Mr. Nazaryan. On her application, Ms. Llanos did not indicate whether children would be living with her. She did indicate on her application (1) that for the past five years she had lived at her father's home, even though she had lived in many different apartments during this period; (2) Mr. Nazaryan's mother was her mother-in-law; (3) she had never been evicted; (3) she had never been convicted of a crime; and (4) that her source of income was from AFDC ($490.00/month).

28. Mr. Nazaryan and Ms. Llanos were never married and they had ceased their cohabitation prior to submitting his rental application to Del Monte.

## III. PROCEDURAL BACKGROUND

Plaintiffs filed this suit on February 29, 1996, seeking monetary, declaratory and injunctive relief. On December 31, 1996, Defendants moved for summary judgment, which the court granted in part and denied in part. On April 30, 1997, Plaintiffs filed a second amended complaint, adding the Fair Housing Council of Fresno County as a party plaintiff.

## IV. LEGAL STANDARD

### A. Summary Judgment Touchstone

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of fact exists when the non-moving party produces evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. *Anderson v. Liberty Lobby*, 477 U.S.

242, 252–56, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party cannot simply rest on its allegation without any significant probative evidence tending to support the complaint. *Id.* at 249, 106 S.Ct. 2505.

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

The more implausible the claim or defense asserted by the opposing party, the more persuasive its evidence must be to avoid summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Nevertheless, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor." *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. 2505. Even where the basic facts are undisputed, if reasonable minds could differ as to the inferences to be drawn from those facts, summary judgment should be denied. *Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir.1992). The court's role on summary judgment, however, is not to weigh the evidence, *i.e.*, issue resolution, but rather it is issue finding. *Id.*

Evidence submitted in support of or in opposition to a motion for summary judgment must be admissible under the standard articulated in 56(e). *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir.1989).

### B. Applicable Law

FHA discrimination claims are analyzed in the same manner as Title VII discrimination claims. *Gamble v. City of Escondido*, 104 F.3d 300, 304 (9th Cir.1997). A plaintiff can establish a FHA discrimination claim by either of two methods. *See Kormoczy v. Department of Hous. & Urban Dev.*, 53 F.3d

821, 823–24 (7th Cir.1995) (specifically addressing FHA familial status discrimination claims). The first method is the *McDonnell Douglas* burden-shifting test. Under this test, the plaintiff must demonstrate all the elements of a prima facie case. *Ring v. First Interstate Mortg., Inc.,* 984 F.2d 924, 926 (8th Cir.1993). In the FHA familial status discrimination context, Plaintiffs would have to show that:

 (1) Llanos is a member of a protected class;

 (2) Llanos applied to rent an apartment and was qualified to do so;

 (3) Llanos was rejected; and

 (4) the apartment was rented soon thereafter to someone outside the protected class.

*See Gamble,* 104 F.3d at 305.

Once the plaintiff sufficiently establishes a prima facie case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for its action. If the defendant asserts a reasonable legitimate reason, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons propounded by defendant are in fact mere pretext.

The second method of proving disparate treatment is by establishing a "direct discriminatory intent ... through direct or circumstantial evidence." *Kormoczy,* 53 F.3d at 823–24. "Where direct evidence is used to show that a housing decision was made in violation of the [FHA], the burden shifting analysis is inapposite." *Id.* at 824. There is no need to demonstrate a prima facie case using this direct method. *See Warren v. City of Carlsbad,* 58 F.3d 439, 442 n. 1 (9th Cir.1995) (Title VII context); *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 n. 13, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (noting that McDonnell Douglas test need not be strictly followed in a disparate treatment case).

■ To establish a prima facie disparate impact claim, a plaintiff must show " 'at least that the defendant's actions had a discriminatory effect." *Gamble,* 104 F.3d at 306 (citations omitted). The elements of a prima facie disparate impact case include: "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or dis-

proportionate impact on persons of a particular type produced by defendant's facially neutral acts or policies." *Id.*

■ A familial status claim does not require a showing of discriminatory intent. *Fair Housing Council of Orange County, Inc. v. Ayres,* 855 F.Supp. 315, 315 (C.D.Cal. 1994) (citing *Keith v. Volpe,* 858 F.2d 467 (9th Cir.1988) (proof of intent is not required to establish a violation)).

## V. ANALYSIS AND DISCUSSION

### A. "Steering" Violates the Fair Housing Act

Plaintiffs contend Defendants violated section 3604(a) and (c) and related state fair housing laws by engaging in discriminatory steering on the basis of familial status.

Congress promulgated the Fair Housing Act ("FHA") as Title VIII of the Civil Rights Act of 1968. *Fair Housing Council of Orange County, Inc. v. Ayres,* 855 F.Supp. 315, 316 (C.D.Cal.1994). The FHA was enacted to "[e]nsure the removal of artificial, arbitrary, and unnecessary barriers when the barriers operate invidiously to discriminate on the basis of impermissible characteristics." *United States v. Parma,* 494 F.Supp. 1049, 1053 (N.D.Ohio 1980), *rev'd on other grounds,* 661 F.2d 562 (6th Cir.), *cert. denied,* 456 U.S. 926, 102 S.Ct. 1972, 72 L.Ed.2d 441 (1982). The Act was designed to prohibit "all forms of discrimination [even the] simple-minded." *Williams v. Matthews Co.,* 499 F.2d 819, 826 (8th Cir.1974).

In 1988, Congress amended the FHA to prohibit "familial status" discrimination, that is, discrimination against parents and other custodians living with children under the age of 18. 42 U.S.C. § 3602(k). Specifically, the FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, *familial status,* or national origin." 42 U.S.C. § 3604(b) (emphasis added). "Congress expanded the Fair Housing Act to protect against familial status discrimination in light of an express concern for the plight of single-parent families, young families with

children, and poor families." *See United States v. Branella,* 972 F.Supp. 294, 297 (D.N.J.1997) (Title VIII accords families broad protection).

Section 3604(a) makes it unlawful to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of ... familial status." 42 U.S.C. § 3604(a).

Section 3604(c) prohibits the making or publishing of any statement or advertisement that "indicates" any preference or limitation based on, among other factors, family status. 42 U.S.C. § 3604(c). The implementing regulations in effect at the relevant time provide that the prohibition encompasses "written or oral notices or statements by a person engaged in the sale or rental of a dwelling." 24 C.F.R. § 100.75(a) (1995). A discriminatory statement includes "[e]xpressing to agents, brokers, employees, prospective sellers or renters or any other persons a preference for or limitation on any purchaser or renter because of ... familial status ...." 24 C.F.R. § 100.75(c)(2); *Stewart v. Furton,* 774 F.2d 706 (6th Cir.1985) (discriminatory oral statement violates section 3604(c)).

▆▆▆ To determine whether a statement "indicates" impermissible discrimination an "ordinary listener" standard is employed.[3] *See Ragin v. New York Times Co.,* 923 F.2d 995, 999 (2d Cir.), *cert. denied,* 502 U.S. 821, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991); *see also Jancik v. Department of Housing & Urban Development,* 44 F.3d 553, 556 (7th Cir.1995) (adopting the "ordinary listener" test). The inquiry under this standard is whether the alleged statement at issue would suggest to an "ordinary listener" that people with a particular familial status are preferred or dis-preferred for the housing in question. *Ragin,* 923 F.2d at 999. The ordinary listener "is neither the most suspicious nor the most insensitive of our citizenry." *Id.* at 1002. Section 3604(c) may be violated without a showing of a subjective intent to discriminate. *Jancik,* 44 F.3d at 556.

▆▆▆ Plaintiffs argue Defendants violated the FHA by unlawfully "steering," or attempting to steer, Plaintiffs to the family section and away from the "adult" section merely because Ms. Llanos lived with her three-year old daughter. "Steering" is the type of violation that is encompassed within the "otherwise make unavailable" proscriptive language set forth within in section 3604(a). *Department of Hous. & Urban Dev. v. Edlestein,* 1991 WL 442784, at *4 (H.U.D. 1991). Steering is not an "outright refusal to rent to a person within a ˙class of people protected by the statute; rather it consists of efforts to deprive a protected homeseeker of housing opportunities in certain locations." *Id.* at *5.

Regulations promulgated by the Department of Housing and Urban Development ("HUD") make it unlawful, because of familial status, "to restrict or attempt to restrict the choices of a person by word or conduct in connection with seeking, negotiating for, buying or renting a dwelling so as to *perpetuate, or tend to perpetuate, segregated housing patterns, or to discourage or obstruct choices in a community, neighborhood or development.*" 24 C.F.R. § 100.70(a) (emphasis added). Among the practices prohibited are "[a]ssigning any person to a particular section of a community, neighborhood or development, or to a particular floor of a building," because of familial status. 24 C.F.R. § 100.70(c)(4).

The evidence proffered by the parties amply demonstrates that Defendants purposely and unlawfully divided Del Monte into two distinct sections, one for adults and one for families with children under the age of 18. *See* Depo. of Grice 43–44 (Del Monte was divided into family and adult sections. Del Monte's stated policy was that "families live in family sections and adults live in adult sections."). Depo. of Grice at 96:6–7. This configuration, made discriminatory by the FHA and section 100.70(c), was implemented by Del Monte's manager, Ms. Alsup, and its rental clerks. Defendants have testified that there is a "possibility" that a family with children was denied the opportunity to rent an apartment at the Del Monte because there was no room in the family section. Ms.

---

**3.** The Ninth Circuit has not yet addressed this issue. The reasoning employed by other circuits is sound, the "ordinary listener" standard applies.

Grice testified that during her training she was instructed that the available units in the family section were to be rented only to families with children. During Alsup's tenure as manager, rental applicants who stated they had children were not allowed to rent an apartment in the adult section of Del Monte.

Defendants do not dispute that they violated the FHA "by assigning families with children to a particular section of the development." Defs.' Opp. to Pls.' Mot. For Summ. Jud. at 3:26–28. They suggest, however, that Plaintiffs were not unlawfully steered to any particular section as Plaintiffs already resided in the adult section.[4] Ms. Grice testified that upon discovering that a family with children was living in the adult section, Del Monte personnel would

> call sometimes and ask them if they'd be interested in moving to a two-bedroom family section and find out what [the family] thought. And if they liked the idea, we'd discuss the procedure; and if they didn't, then we noted that in our file.

Depo. of Grice at 54:8–13.

Defendants contend that the "evidence most favorable to defendants here is that the policy of Del Monte Pines was to sometimes contact persons living in adult sections, inform them that there is available housing in the family units, and to determine whether or not they are interested." Defs.' Opp. at 3:9–12.

Standing alone, Del Monte's policy of contacting families residing in the adult section and informing them of the availability of apartments in the family section does not run afoul of the FHA. A violation arises if the rental agent expresses or underscores a preference or limitation for the family and or against adult sections and directly or tacitly enforces that discriminatory policy. *Cf. Village of Bellwood v. Dwivedi*, 895 F.2d 1521, 1530 (7th Cir.1990) (Title VII prohibits "real estate agents ... [from] cajoling or coercing the customer because of his race to buy this property or that or look in this community rather than that."); *see also Cabrera v. Jakabovitz*, 24 F.3d 372, 378 n. 2 (2d Cir.) ("Racial steering is a practice by which real estate brokers and agents preserve and encourage patterns of racial segregation in available housing by steering members of racial and ethnic groups to buildings occupied primarily by members of such racial and ethnic groups and away from buildings and neighborhoods inhabited primarily by members of other races or groups."), *cert. denied*, 513 U.S. 876, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994). In determining whether the policy of encouraging families with children to relocate to the adult section was discriminatory, Defendants' conduct must be considered under the totality of the circumstances.

Ms. Grice testified that once she learned about Sophia, she

> "probably talked to Grachik and asked them if they live there. And we said, well, we have a family section, and if you people would be interested in moving to the family section—*we have a family section for people with children and we have an adult section for adults*."

Depo. of Grice at 95:3–9 (emphasis added).[5]

Ms. Grice's statement emphasized that Del Monte had two sections and it preferred adults and families to live in their respective sections. *See United States v. Grishman*, 818 F.Supp. 21 (D.Me.1993) (landlord's oral statement to rental agent that property was "less suitable" for families with children is a statement indicating a preference based on familial status in violation of section 3604(c)). Reasonably interpreted, Ms. Grice was informing Ms. Llanos that she *should relocate* to the family section because she was living with her child. Ms. Grice's statement, when considered with Del Monte's rental policies of

---

4. Although Plaintiffs resided in Del Monte's adult section, they have standing to sue for discriminatory housing practices. Title 42 U.S.C. § 3613(a) provides that "an aggrieved person may commence a civil action in an appropriate ... court ... to obtain appropriate relief." An "aggrieved person" is any person who claims to have been injured by a discriminatory housing practice or believes that such person will be injured by a discriminatory housing practice that is about to occur. 42 U.S.C. § 3602(i).

The evidence before the court has established that Defendants attempted to steer Ms. Llanos to a family section in accordance with the discriminatory configuration fostered by the Defendants.

5. Ms. Grice commented that her statement "was more likely" what she told "them," but that she was unsure. However, in a note memorializing her conversation, Ms. Grice wrote: "I explained the rules to them about family and adult section, et cetera. C.G."

balkanizing the apartment complex into two domains, adult and non-adult, constitute a direct interference with Plaintiff's living choices in violation of 24 C.F.R. § 100.70(a). *Id.* (it is unlawful, because of familial status "to restrict or attempt to restrict the choices of a person ... or to *discourage* or obstruct choices in a community, neighborhood or development."); *Fair Housing Congress v. Weber*, 993 F.Supp. 1286, 1293–94 (C.D.Cal. 1997) (defendants violated section 3604(a) and (c) by maintaining informal policy of not renting second-floor entry balcony apartments to families with small children). That is, Defendants presumptively contacted Plaintiff in the hopes that she would move to the adult section, where she belonged, and there by preserve or maintain the discriminatory configuration fostered by Defendants. Defendants' conduct is no less discriminatory or objectionable because their prodding may not have always caused a family with children to move out of the adult section and into the family, as is the case here. The fact that they were attempting to discourage and steer families with children in connection with their discriminatory, segregated housing plan is a violation of the FHA.

Defendants argue that their motivations were purely family-oriented. Defendants assert that they merely informed. Ms. Llanos "that a section more conducive to family living existed and the availability of transfer was present if she wished." Defs.' Opp. To Pls.' Mot. For Summ. Jud. at 4:1–2. Ms. Grice averred that once she "became aware that Ms. Llanos was living with her baby[,] [she contacted Ms. Llanos and] suggested that she could move into a 2–bedroom apartment in the 'family' section of the complex.... [because Ms. Llanos] ... might like it more." Decl. of Grice at ¶ 15.

Though Defendants' arguments and justifications are subject to question, given their discriminatory housing policies, they have introduced sufficient evidence concerning their motives and intent to defeat Plaintiffs' motion for summary judgment. 10B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2732.2 (1998) ("[I]n cases alleging ... discrimination in ... housing, an examination of motive and intent usually is involved, making the granting of summary judgment especially questionable.") (collecting cases); *cf. Rogers v. Lewis*, 792 F.2d 1052, 1059 (11th Cir.1986) ("Ordinarily, summary judgment should not be granted in cases where motive, intent, subjective feelings, and reactions are to be searched.").

This genuine factual dispute also prevents the court from determining whether Defendants' "steering" violated the California Fair Employment and Housing Act[6] and the Unruh Civil Rights Act.[7] Plaintiffs' motion for partial summary judgment on the steering claims is DENIED.

## B. Restricting Childrens' Access to the Entire Complex

Plaintiffs argue that Defendants violated federal and state law by "promulgating and enforcing rules that discriminate against families with children by limiting their use of the services and facilities at the rental premises." Plaintiffs contend that these alleged discriminatory rules violates 42 U.S.C. § 3604(b) and (c), the California Government Code § 12955(a), (c) and (k), and California Civil Code § 51–52. Defendants maintain that these rules are not discriminatory, but rather, are justified by reasonable health, safety and business reasons.

The FEHA is to be liberally construed to effectuate its purposes. California Govt.Code § 12993(a). "FEHA in the housing area is thus intended to conform to the general requirements of federal law in the area and may provide greater protection against discrimination." *Brown v. Smith*, 55 Cal.App.4th 767, 780, 64 Cal.Rptr.2d 301, 309 (1997).

---

**6.** The Fair Housing and Employment Act ("FEHA") proscribes housing discrimination on the basis of "race, color, religion, sex, marital status, national origin, ancestry, *familial status*, or disability of that person." California Govt. Code § 12955(a) (emphasis added). Subsection (b), makes it illegal for "the owner of any housing accommodation to make or to cause to be made any written or oral inquiry concerning the race, color, religion, sex, marital status, national origin, ancestry, *familial status*, or disability of any person seeking to purchase, rent or lease any housing accommodation." California Govt.Code § 12955(b) (emphasis added).

**7.** Section 51 prohibits "a business establishment from discriminating in the sale or rental of housing based upon age." California Civil Code § 51.2(a).

The Del Monte rules at issue are as follows:

(1) Del Monte's "House Rules" provide that "[b]icycle skates, and skateboard riding is permitted only in family areas. This will be strictly enforced."

(2) Rule number 5 states that "[p]laying on second floor landings, stairways, *and in adult areas is forbidden.* This is dangerous and disturbs [sic] adjacent tenants" (emphasis added).

(3) House Rule number 2 provides: "Children will swim in family pools only. Adult pools are for ADULTS ONLY." Ms. Alsup testified that since 1988, only two of the swimming pools at the Del Monte were available for use by children. Children under 18 were not permitted to use the four adult pools.

Title 42 U.S.C. § 3604(b) proscribes discrimination *inter alia* against any person on the basis of familial status in connection with the provision of services or facilities. Federal regulations provide that it is unlawful to "limit[ ] the use of privileges, services or facilities associated with a dwelling because ... of familial status ...." 24 C.F.R. § 100.65(b)(4).

In *U.S. v. M. Westland Co.,* plaintiffs brought a housing discrimination suit against their mobile home park, alleging the Park's "rules" discriminated against families with children by indicating a indicated a "preference, limitation, or discrimination" in the "terms and conditions" and "provision of services and facilities." In that case, the Park's rules provided that children under the age of 18 were not: allowed outside of their mobile homes unless they were under adult supervision; to play in the streets; permitted in the park's clubhouse or other common areas without adult supervision; and to be in the swimming pool area unless accompanied by an adult. *Id.* at 15,941.1. The *Westland* court found these rules "facially discriminatory" because they "treat children and, thus, families with children differently-and less fa-

vorably-than households comprised of adults only." *Id.* at 15,941.2.

Similarly here, Defendants' rules are facially discriminatory. Del Monte's rules penalize families with children by disallowing children access to four of six pools and prohibiting children from playing in adult areas. These rules effectively confine children to the family section and prohibit them from enjoying the privileges accorded to adults living in the adult section. *HUD v. Paradise Gardens,* HUDALJ 04–90–0321–1, 1992 WL 406531, at (HUDALJ Oct. 15, 1992) (finding that Defendants various pool restrictions for children, *e.g.,* no child under the age of five is permitted in the pool or pool area, violate the Fair Housing Act).

Defendants can rebut a *prima facie* case of discrimination by showing that their rules are required by a reasonable business reason. *Pfaff v. U.S. Dep't of Hous. & Urban Dev.,* 88 F.3d 739, (9th Cir.1996) (defendant's reasons for implementing facially discriminatory rules must be reviewed under a reasonableness standard); *see also U.S. v. M. Westland Co.,* at 15,941.2 [8] (citing *Fair Housing Council of Orange County, Inc. v. Ayres,* 855 F.Supp. 315, 318 (C.D.Cal.1994)) ("After a plaintiff establishes a prima facie case, a presumption of illegality arises and defendant has the burden of articulating a legitimate, non-discriminatory justification for the challenged policy."); *see also*

Defendants contend that their regulations concerning pools is justified since two-thirds of the apartments were designated for adults. This reasoning is circular. No explanation is offered why 2/3 of the apartments must be adult. Defendants also argue that the pool restriction is justified by safety reasons because it "is universally known that children must be carefully supervised in the area of swimming pools, especially if they are so young as [to] lack necessary judgment to avoid drowning." Defs.' Opp. To Pls.' Mot. For Summ. Jud. at 7:8–10. "As a general rule, safety judgments are for informed parents to make, not landlords." *Edlestein,*

---

8. "Although they are administrative decisions, HUD is the federal agency charged by Congress with interpreting and enforcing the Act, and it has special expertise in housing discrimination. *See* 42 U.S.C. § 3608(a) (1994). Therefore, these decisions are entitled to great weight. *Traffi-*

*cante v. Metropolitan Life Insurance Co.,* 409 U.S. 205, 210, 93 S.Ct. 364, 367, 34 L.Ed.2d 415 (1972)." *Fair Housing Council of Orange County, Inc. v. Ayres,* 855 F.Supp. 315, 318 (C.D.Cal. 1994).

1991 WL 442784, at *5. Defendants' rule concerning pools is overly broad, "paternalistic" and unduly restrictive. *Ayres,* 855 F.Supp. at 319 ("Even if defendant's damage prevention rationale were supported by independent evidence, it does not show the occupancy restriction is the least restrictive means to achieve defendant's purpose."); *M. Westland,* at ¶ 15,941.3 (court held that the "rule that all children must be accompanied by an adult in order to swim in the park pool" is not justified. The adult-only restrictions prevent a 16 or 17 year old certified lifeguard from swimming unaccompanied in adult pools.); *see also Department of Hous. & Urban Dev. v. Beacon Square Pool Ass'n,* 1993 WL 668297, at *1 (H.U.D.1993) (parties stipulated that rule restricting children ages 12 through 17 in having guests at the swimming pool and restricting the hours that children could use the swimming pool violates section 3604(b)).

With respect to restricting children's recreational activities, the Defendants contend that their rules are not unreasonable because they simply "forbid certain activities . . . considered dangerous for their tenants." The rule is not entirely objectionable. Ms. Alsup averred that Del Monte "has many curved walkways that have obstructions to vision and even with these rules in effect, two to three times each year we get complaints of accidents and near accidents involving tenants on chores such as laundry or unloading groceries in the same areas where other tenants are running, skateboarding, or bicycling." Decl. of Alsup in Opp. To Pls.' Mot. For Summ. Jud. at ¶ 5 (Ms. Alsup intimates that this rule is not extended to family sections because "it is impractical to limit families with children from" engaging in recreational activities in "close proximity to their home.").

The rule, however, is unreasonable inasmuch as it forbids children from playing in adult areas, thereby discriminating against families based on familial status. The rule effectively prohibits children from accessing a large area of the complex. *See Weber,* 993 F.Supp. at 1290–92 (Court found that rule prohibiting children from playing or running around inside the building area at any time "because of disturbance to other tenants or damage to building property" was facially discriminatory as a matter of law and not supported by a reasonable, non discriminatory reason.).

Plaintiffs have made out a prima facie case of discrimination by showing facially discriminatory rules which treat children, and thus, families with children, differently and less favorably than adults-only households. Defendants have not asserted any reasonable and nondiscriminatory reasons justifying Del Monte's overly broad and restrictive rules against children in connection with their access to the pools and the prohibition of play in and around the building areas. Plaintiffs' motion for partial summary judgment as to these rules is GRANTED.

Defendants argue that these rules do not affect Sophia because she is too young to either swim, skateboard or skate. While this may be true, Defendants' discriminatory policies nevertheless are targeted against children generally, a class of persons that includes Sophia. Defendants' argument is relevant for the purposes of determining her injuries and whether she is entitled to any monetary relief.

### C. The Owner Defendants Are Held Liable for the Conduct of Their Agents

 Defendants contend that the conduct of the rental agents cannot be attributed to them under a theory of respondeat superior. They are mistaken. It is well established that "the duty of a property owner not to discriminate in the leasing or sale of that property is non-delegable." *Walker v. Crigler,* 976 F.2d 900, 904 & n. 5 (4th Cir.1992) (citing *Marr v. Rife,* 503 F.2d 735, 741 (6th Cir.1974) ("The discriminatory conduct of an apartment manager or rental agent is, as a general rule, attributable to the owner and property manager of the apartment complex, both under the doctrine of respondeat superior and because the duty to obey the law is non-delegable.")). Thus, a property owner is liable for the conduct of his employees despite instructions to them not to discriminate. *Walker,* 976 F.2d at 904–905.

To effectuate the specific mandates of anti-discrimination law, Joe Coehlo, the estates of Frank and Anthony Coehlo, and Linda Vista Farms Partnership must be held responsible for all the discriminatory practices practiced by Del Monte's rental agents.

### D. *Miscellaneous Arguments*

Defendants' defense of unclean hands does not bar this court from granting Plaintiffs' motion for partial summary judgment. The unclean hands assertion goes to the question of what available remedies Plaintiffs are entitled to. This remains an issue to be decided at trial. *See* Memorandum Opinion of Jan. 28, 1997.

Finally, Defendants correctly argue that because Frank and Anthony Coehlo are deceased, Plaintiffs should be precluded from recovering punitive damages, if any are awarded, against Defendants' respective estates. California Civil Procedure Code § 377.42 bars the imposition of punitive damages against a decedent or his estate.

### VI. *CONCLUSION*

For the foregoing reasons, Plaintiffs' motion for partial summary judgment is DENIED IN PART AND GRANTED IN PART.

Counsel for Plaintiffs shall prepare an order in conformity with this memorandum opinion and lodge it with the court within five (5) business days following the date of service of this opinion.

IT IS SO ORDERED.